

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
EIM MANAGEMENT (USA) INC.,                    :

                   Plaintiff,      :      Civil Action

      v.                                      :      '08 - CIV - 6980

JOHN DOES 1-10,                               :

               Defendants.      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## APPENDIX OF CASES AND ORDERS CITED IN PLAINTIFF EIM MANAGEMENT (USA) INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS EX PARTE MOTION FOR LIMITED EXPEDITED DISCOVERY

William P. Frank
Matthew J. Matule (*pro hac vice* to be filed)
Scott D. Brown
Christopher G. Clark
SKADDEN, ARPS, SLATE
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone:  (212) 735-3000
Facsimile:  (212) 735-2000

-- and --

One Beacon Street
Boston, Massachusetts 02108
Telephone:  (617) 573-4800
Facsimile:  (617) 573-4822

Counsel for Plaintiff
EIM Management (USA) Inc.

Dated:  August 5, 2008

# TABLE OF CONTENTS

**CASES**                                                         **TAB**

Arista Records LLC v. Does 1-7, No. 3:08-CV-18(CDL),
2008 WL 542709 (M.D. Ga. Feb. 25, 2008)...........1

Best Western International, Inc. v. Doe, No. CV-06-1537-PHX-DGC,
2006 WL 2091695 (D. Ariz. July 25, 2006)...........2

Capitol Records, Inc. v. Doe, No. 07-cv-1570-JM (POR),
2007 WL 2429830 (S.D. Cal. Aug. 24, 2007)...........3

Capitol Records, Inc. v. Does 1-250, No. 04-cv-00472 (LAK) (HBP),
(S.D.N.Y. Jan., 26, 2004)...........4

Elektra Entertainment Group Inc. v. Does 1-9, No. 1:04-cv-02289-RWS,
(S.D.N.Y. Mar. 23, 2004)...........5

Interscope Records v. Does 1-14, No. 5:07-4107-RDR,
2007 WL 2900210 (D. Kan. Oct. 1, 2007)...........6

Interscope Records v. John Doe, No. 1:04-cv-12435-NG,
(D. Mass. Dec. 9, 2004)...........7

Laface Records, LLC v. Does 1-5, No. 2:07-cv-187,
2007 WL 2867351 (W.D. Mich. Sept. 27, 2007)...........8

Merrimack Pharmaceuticals, Inc. v. John Doe, No. 07-cv-10592-JLT,
(D. Mass. Mar. 28, 2007) (Docket Entry)...........9

Moldflow Corp. v. John Does 1-154, No. 07-cv-10722-RCC,
(D. Mass. Oct. 5, 2007)...........10

Motown Records Co., L.P. v. Does 1-99, No. 05-cv-09112-NRB,
(S.D.N.Y. Dec. 15, 2005)...........11

Sony Music Entertainment Inc. v. Does 1-40,
326 F. Supp. 2d 556 (S.D.N.Y. 2004)...........12

UMG Recordings, Inc. v. Does 1-4, No. 06-0652 SBA (EMC),
2006 WL 1343597 (N.D. Cal. Jan. 31, 2006)...........13

Warner Brothers Records, Inc. v. Does 1-14, No. 8:07-CV-625-T-24TGW,
2007 WL 4218983 (M.D. Fla. Nov. 29, 2007)...........14

<u>Warner Brothers Records, Inc. v. Does 1-20</u>, No. 1:07-cv-01131-LTB-MJW
    (D. Colo. June 5, 2007)....................................................................................................15

<u>Warner Brothers Records, Inc. v. Does 1-149</u>, No. 1:05-cv-08365-RO,
    (S.D.N.Y. Jan. 20, 2006)..................................................................................................16

<u>Zomba Recordings LLC v. Does 1-24</u>, No. 3:07-cv-448,
    2008 WL 123839 (E.D. Tenn. Jan. 10, 2008)...................................................................17

# TAB 1

Westlaw.

Slip Copy
Slip Copy, 2008 WL 542709 (M.D.Ga.)
(Cite as: 2008 WL 542709 (M.D.Ga.))

Page 1

**H**

Arista Records LLC v. Does 1-7
M.D.Ga.,2008.
Only the Westlaw citation is currently available.
United States District Court,M.D. Georgia,Athens
Division.
ARISTA RECORDS LLC, a Delaware limited liab-
ility company; Atlantic Recording Corporation, a
Delaware corporation; BMG Music, a New York
general partnership; Capitol Records, Inc., a
Delaware corporation; Interscope Records, a Cali-
fornia general partnership; Laface Records LLC, a
Delaware limited liability company; Motown Re-
cord Company, L.P., a California limited partner-
ship; Sony BMG Music Entertainment, a Delaware
general partnership; UMG Recordings, Inc., a
Delaware corporation; Virgin Records America,
Inc., a California corporation; Warner Bros. Re-
cords Inc., a Delaware corporation; and Zomba Re-
cording LLC, a Delaware limited liability company,
Plaintiffs,
v.
DOES 1-7, Defendants.
No. 3:08-CV-18(CDL).

Feb. 25, 2008.

M. Anne Kaufold-Wiggins, Robert F. Glass, T.
Joshua Archer, Balch & Bingham LLP, Atlanta,
GA, for Plaintiffs.

*ORDER*

CLAY D. LAND, District Judge.
*1 Plaintiffs in the above-captioned action are re-
cord companies owning copyrights and/or licenses
in various sound recordings in the United States.
They filed this lawsuit against seven (7) unnamed
defendants ("the Doe Defendants") seeking dam-
ages and injunctive relief under the copyright laws
of the United States, 17 U.S.C. § 101 *et seq.*
Plaintiffs allege that each unnamed defendant un-
lawfully reproduced and/or distributed protected
sound recordings via an online media distribution
system known as a "peer-to-peer" file sharing net-
work. Presently before the Court is Plaintiffs' *ex
parte* Motion for Leave to Take Immediate Discov-
ery (Doc. 2).

Plaintiffs contend that, due to the nature of the
challenged activity, they are unable to specifically
identify the Doe Defendants and are thus barred
from proceeding with this lawsuit. Plaintiffs can,
however, identify the unique Internet Protocol
("IP") addresses associated with the unlawful activ-
ity alleged to have occurred on specific dates at
specific times. Plaintiffs have also identified the
University of Georgia as the third-party Internet
Service Provider ("ISP") linked to these IP ad-
dresses. Plaintiffs therefore request that the Court
permit them to serve a Rule 45 subpoena on the
University of Georgia requiring it to provide each
Defendant's true name, current and permanent ad-
dress and telephone number, e-mail address, and
Media Access Control ("MAC") address. Addition-
ally, if the University of Georgia is unable to link a
particular IP address to a specific Defendant,
Plaintiffs request that the University provide all
documents and electronically-stored information re-
lating to the assignment of that IP address at the
specific date and time the unlawful activity is al-
leged to have occurred.

A court may allow expedited discovery upon a
showing of good cause. *See Nassau Terminals, Inc.
v. M/V Bering Sea,* No. 99-104-CIV-J-20C, 1999
WL 1293476, at * 1 (M.D.Fla. July 1, 1999) ("The
moving party[ ] ... must show good cause for de-
parting from the usual discovery procedures."); *see
also generally Warner Bros. Records Inc. v. Does
1-20,* No. 07-cv-01131-LTB-MJW, 2007 WL
1655365, at *1 (D.Colo. June 5, 2007) ("A court or-
der allowing expedited discovery will issue only
upon a showing of good cause.") (citing *Qwest
Commc'ns Int'l, Inc. v. Worldquest Networks, Inc.,*
213 F.R.D. 418, 419 (D.Colo.2003); *Pod-Ners, LLC
v. N. Feed & Bean of Lucerne LLC,* 204 F.R.D.
675, 676 (D.Colo.2002)). In this case, Plaintiffs

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 542709 (M.D.Ga.)
(Cite as: 2008 WL 542709 (M.D.Ga.))

have no other way to obtain the most basic informa-
tion about the alleged infringers, and they have
made a *prima facie* showing of copyright infringe-
ment by demonstrating ownership of valid copy-
rights and copying of the original works without
permission. *See Feist Publ'ns, Inc. v. Rural Tel.
Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113
L.Ed.2d 358 (1991). Moreover, time is of the es-
sence due to the fact that ISPs typically do not re-
tain user activity logs for extended periods. If the
information identifying the Doe Defendants is not
disclosed, Plaintiffs will lose the ability to pursue
their claims. (*See* Linares Decl. ¶¶ 22-24, Feb. 7,
2008.) Accordingly, the Court finds that Plaintiffs
have shown good cause for expedited discovery and
hereby grants their Motion for Leave to Take Im-
mediate Discovery (Doc. 2).[FN1]

> FN1. Plaintiffs also request that the Court
> make clear that the University of Georgia
> is authorized to respond to the subpoena
> pursuant to the Family Educational Rights
> and Privacy Act ("FERPA"), 20 U.S.C. §
> 1232g. The Court finds it unnecessary for
> purposes of this Order to address whether
> FERPA affects the University of Georgia's
> ability to disclose the information sought
> by Plaintiffs, particularly since the issue
> has not been briefed.

**\*2** IT IS SO ORDERED.

M.D.Ga.,2008.
Arista Records LLC v. Does 1-7
Slip Copy, 2008 WL 542709 (M.D.Ga.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 2

Westlaw.

Not Reported in F.Supp.2d                                                                 Page 1
Not Reported in F.Supp.2d, 2006 WL 2091695 (D.Ariz.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 2091695 (D.Ariz.))

▷
Best Western Intern., Inc. v. Doe
D.Ariz.,2006.
Only the Westlaw citation is currently available.
United States District Court,D. Arizona.
BEST WESTERN INTERNATIONAL, INC., a
non-profit Arizona corporation, Plaintiff,
v.
John DOE, et al., Defendants.
No. CV-06-1537-PHX-DGC.

July 25, 2006.

Cynthia Ann Ricketts, Sara Kathryn Regan, Squire
Sanders & Dempsey LLP, Phoenix, AZ, for Plaintiff.
Daniel Joseph McAuliffe, Snell & Wilmer LLP,
Phoenix, AZ, Richard T. Mullineaux, Robert Jef-
frey Lowe, Kightlinger & Gray LLP, New Albany,
IN, for Defendants.

**ORDER**

DAVID G. CAMPBELL, District Judge.
*1 Plaintiff Best Western International, Inc.
("BWI") has filed this action against various John
Doe Defendants. BWI claims that the Defendants
have posted anonymous messages on an Internet
site that defame BWI, breach contracts with BWI,
breach fiduciary duties, reveal confidential inform-
ation, infringe BWI trademarks, and constitute un-
fair competition. Because the Internet messages
have been posted anonymously, BWI has been un-
able to identify the John Doe Defendants.

BWI has filed a motion to conduct accelerated and
expedited discovery. Doc. # 5. The motion seeks
permission to serve subpoenas on various Internet
Service Providers ("ISPs") and others before an ini-
tial conference is held pursuant to Rule 26(f) of the
Federal Rules of Civil Procedure. The subpoenas
seek disclosure of the identities of the sponsor for
the Internet site as well as individuals who have
posted messages. BWI contends that such informa-

tion is needed before the John Doe Defendants can
be served with BWI's complaint and can participate
in a Rule 26(f) conference. Alleging that it is suf-
fering irreparable injury as a result of comments
posted on the site, BWI seeks expedited discovery
and expedited consideration of its motion to con-
duct the discovery. Doc. # 6.

BWI also asks the Court to issue an order requiring
the preservation of evidence related to the identities
of the John Doe Defendants. Doc. # 7. BWI notes
that information concerning Internet users typically
is retained for only a short period of time. BWI
asks the Court to enter an order requiring the pre-
servation of information until it can be obtained
through discovery.

One of BWI's proposed subpoenas would be direc-
ted to H. James Dial. Mr. Dial has appeared
through counsel, identified himself as one of the
John Doe Defendants, and filed an opposition to
BWI's motion for discovery and a counter-motion
to stay all discovery until completion of a Rule
26(f) conference. Doc. # 11. BWI has filed a re-
sponse. Doc. # 17.

This order will address four issues: (1) whether
BWI has shown good cause to conduct discovery in
advance of a Rule 26(f) conference, (2) whether
this Court has jurisdiction to rule on the propriety
of BWI's proposed subpoenas, (3) what showing
BWI must make in order to conduct discovery that
implicates First Amendment rights of the John Doe
Defendants, and whether BWI has made that show-
ing, and (4) other relevant considerations.

**1. Good Cause.**

Rule 26(d) provides that "a party may not seek dis-
covery from any source before the parties have con-
ferred as required by Rule 26(f)."Fed.R.Civ.P.
26(d). The rule makes clear, however, that this lim-
itation can be overridden by court order. *Id.* An or-
der permitting discovery before a Rule 26(f) confer-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 2091695 (D.Ariz.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 2091695 (D.Ariz.))

ence may be issued for "good cause." *Yokohama Tire Corp. v. Dealers Tire Supply, Inc.,* 202 F.R.D. 612, 614 (D.Ariz.2001).

BWI has satisfied the good cause requirement. BWI has established by affidavit that it is unable to identify the John Doe Defendants by means other than the subpoenas. Doc. # 9. Although Mr. Dial volunteered that he is one of the John Doe Defendants, the action is brought against an apparently large number of individuals who have posted anonymous messages on the Internet site. The case cannot proceed and a Rule 26(f) conference cannot be held until these Defendants are identified.

*2 In addition, courts have recognized that ISPs typically retain user information for only a limited period, ranging from a few days to a few months. *UMG Recordings, Inc. v. Does I-IV,* No. 06-0652 SBA (EMC), 2006 WL1343597, at * 1 (N.D.Cal. Mar. 6, 2006). The loss of evidence seems particularly possible in this case, as the Internet site expressly states to users that "your identity will be totally and forever withheld *and destroyed.*" Doc. # 5, Ex. A at 2 (emphasis added).

Because the identities of the John Doe Defendants is necessary for this case to proceed and there is reason to believe that those identities may be lost if discovery is delayed, the Court concludes that BWI has established good cause to conduct discovery before the Rule 26(f) conference. This conclusion does not, however, answer the question of whether discovery should be permitted in light of the First Amendment rights of the John Doe Defendants. That issue will be addressed below.

**2. The Court's Jurisdiction to Address the First Amendment Question.**

BWI's proposed subpoenas to ISPs and other individuals will be issued by federal district courts in the jurisdictions where those entities and individuals reside. Because only the court issuing a subpoena generally has power to quash it, BWI argues

that this Court has no jurisdiction to address the propriety of the subpoenas.

Rule 45(c) does provide that subpoenas should be enforced by the district court which issued them, but this rule "does not alter the broader concept that the district court in which an action is pending has the right and responsibility to control the broad outline of discovery."*Static Control Components, Inc. v. Darkprint Imaging,* 201 F.R.D. 431, 434 (M.D.N.C.2001). General discovery issues should receive uniform treatment throughout the litigation, regardless of where the discovery is pursued. Courts have also recognized that a party's " 'discovery rights [in other districts] can rise no higher than their level in the district of trial.' " *Id.* (quoting *Fincher v. Keller Indus., Inc.,* 129 F.R .D. 123, 125 (M.D.N.C.1990)).

The First Amendment implications of BWI's proposed discovery constitutes a significant issue in this case. Not only are the First Amendment rights of fundamental importance to the John Doe Defendants, but they also will be preserved or defeated by discovery orders. To the extent that Defendants have a First Amendment right to anonymous speech (a right addressed below), the right will be lost if BWI is permitted to learn the speakers' identities through discovery. This right will be at issue in every district where BWI's subpoenas are served. It makes little sense to leave such a central issue to district-by-district determination.

The Court concludes that it can and should address the First Amendment issues raised by BWI's discovery motion. As the court noted in *Static Control,*"[t]his issue extends well beyond the matter of a specific subpoena."*Id.* at 434 n. 5.

**3. First Amendment Considerations.**

*3 BWI is a non-profit member corporation. Doc. # 3 at ¶ 9. BWI's members own and operate more than 4,000 hotels and lodging properties under the BWI name and trademark. *Id.* at ¶ 10.BWI's board

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 2091695 (D.Ariz.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 2091695 (D.Ariz.))

of directors communicates with BWI members through regional governors who are appointed to oversee specific geographic districts. *Id.* at ¶ 11.

BWI's complaint and motions say little about the content of the Internet messages at issue in this case. Mr. Dial asserts, however, that the Internet site was created as a place for BWI members and governors to state their views on various issues concerning BWI. Specifically, Dial asserts that recent proposed changes in BWI's method of operation have drawn extensive comment on the site. The site describes itself as a "site for Best Western members," where members and headquarters staff "can exchange information on a 100% confidential basis."Doc. 5, Ex. A.

Several First Amendment principles are relevant.

First, the Amendment protects anonymous speech. *See Buckley v. Am. Constitutional Law Found.,* 525 U.S. 182, 200 (1999). The Supreme Court has noted that "[a]nonymity is a shield from the tyranny of the majority."*McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 357 (1995). Indeed, "[u]nder our Constitution, anonymous pamphleteering is not a pernicious, fraudulent practice, but an honorable tradition of advocacy and of dissent."*Id.*

Second, the protections of the First Amendment extend to the Internet. *See Reno v. ACLU,* 521 U.S. 844, 870 (1997)."Courts have recognized the Internet as a valuable forum for robust exchange and debate."*Sony Music Entm't, Inc. v. Does 1-40,* 326 F.Supp.2d 556, 562 (S.D.N.Y.2004)."Through the use of chat rooms, any person with a phone line can become a town crier with a voice that resonates farther than it could from any soapbox."*Reno,* 521 U.S. at 870. Courts also recognize that anonymity is a particularly important component of Internet speech. "Internet anonymity facilitates the rich, diverse, and far ranging exchange of ideas [;] ... the constitutional rights of Internet users, including the First Amendment right to speak anonymously, must be carefully safeguarded."*Doe v. 2 The Mart.com, Inc.,* 140 F.Supp.2d 1088, 1092, 1097

(W.D.Wash.2001).

Third, "courts have held that civil subpoenas seeking information regarding anonymous individuals raise First Amendment concerns."*Sony,* 326 F.Supp.2d at 563 (*citing NAACP v. Ala. Ex Rel Patterson,* 357 U.S. 449, 462 (1958); *NLRB v. Midland Daily News,* 151 F.3d 472, 475 (6th Cir.1998); *L.A. Mem'l Coliseum, Comm'n v. Nat'l Football League,* 89 F.R.D. 489, 494-95 (C.D.Cal.1981)).

Fourth, the right to speak anonymously is not absolute. *See McIntyre,* 514 U.S. at 353;*Harper & Row Publishers, Inc. v. Nation Enters.,* 471 U.S. 59, 555-56 (1985) (First Amendment does not protect copyright infringement); *Doe v. Cahill,* 884 A.2d 451, 456 (Del.2005) ("Certain classes of speech, including defamatory and libelous speech, are entitled to no constitutional protection.")."Those who suffer damages as a result of tortious or other actionable communications on the Internet should be able to seek appropriate redress by preventing the wrongdoers from hiding behind an illusory shield of purported First Amendment rights."*In re Subpoena Duces Tecum to America On-Line, Inc.,* No. 40570, 2000 WL1210372, at *5 (Va.Cir.Ct. Jan. 31, 2000).

*4 These principles make clear that the John Doe Defendants have a First Amendment right to anonymous Internet speech, but that the right is not absolute and must be weighed against BWI's need for discovery to redress alleged wrongs. To ensure that the First Amendment rights of anonymous Internet speakers are not lost unnecessarily, courts typically require parties to make some showing before obtaining discovery of the speakers' identities. Courts have recognized a range of possible showings. As the Delaware Supreme Court has explained, "an entire spectrum of 'standards' ... could be required, ranging (in ascending order) from a good faith basis to assert a claim, to pleading sufficient facts to survive a motion to dismiss, to a showing of *prima facie* evidence sufficient to withstand a motion for summary judgment and, beyond that, hurdles even more stringent."*Cahill,* 884 A.2d 'at 457. BWI urges the Court to adopt the lowest

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 4
Not Reported in F.Supp.2d, 2006 WL 2091695 (D.Ariz.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 2091695 (D.Ariz.))

standard-good faith. Dial suggests the more stringent summary judgment standard.

In deciding which standard to apply, the Court must consider the significance of the First Amendment rights at issue in this case. BWI cites several cases in which plaintiffs sued defendants for illegally downloading music from the Internet. Although the courts found that the downloading of information was entitled to some protection under the First Amendment, they recognized that downloading was not purely expressive and therefore was entitled only to "limited" First Amendment protection. *Sony,* 326 F.Supp.2d at 564; *UMG Recordings,* 2006 WL1343597 at *1 ("A person who uses the Internet to download or distribute copyrighted music without permission is engaging in the exercise of speech, but only to a limited extent[.]").

The conduct of the John Doe Defendants, by contrast, is purely expressive. The Defendants are expressing their views on issues of interest to BWI members and governors in a forum specifically designed for an exchange of opinions and ideas anonymously. Such speech is entitled to substantial First Amendment protection.

Given the significant First Amendment interest at stake, the Court agrees with the Delaware Supreme Court in *Cahill,* and concludes that a summary judgment standard should be satisfied before BWI can discover the identities of the John Doe Defendants. The court in *Cahill* described the test in these words: "Before a defamation plaintiff can obtain the identity of an anonymous defendant through the compulsory discovery process, he must support his defamation claim with facts sufficient to defeat a summary judgment motion."884 A.2d at 460. This standard does not require a plaintiff to prove its case as a matter of undisputed fact, but instead to produce evidence sufficient to establish the plaintiff's *prima facie* case:

[T]o obtain discovery of an anonymous defendant's identity under the summary judgment standard, a defamation plaintiff must submit sufficient evid-

ence to establish a *prima facie* case for each essential element of the claim in question. In other words, the defamation plaintiff, as the party bearing the burden of proof at trial, must introduce evidence creating a genuine issue of material fact for all elements of a defamation claim *within plaintiff's control.*

*5 *Id.* at 465 (quotations and citations omitted, emphasis in original). The emphasized words "within plaintiff's control" recognize that a plaintiff at an early stage of the litigation may not possess information about the role played by particular defendants or other evidence that normally would be obtained through discovery. But a plaintiff must produce such evidence as it has to establish a *prima facie* case of the claims asserted in its complaint.

BWI's complaint provides an example of why the summary judgment standard is appropriate. The complaint alleges that Defendants have improperly posted confidential BWI information on the Internet site, wrongfully posted BWI's trademark on the site, used BWI's equipment to communicate with the site, deprived BWI of the benefits of its contract with Defendants, and made false statements regarding BWI and its business. Doc. # 3 ¶¶ 58-60, 64, 68. But BWI's complaint does not identify a single false statement allegedly made by the John Doe Defendants, identify a single item of confidential information posted on the site by Defendants, describe a single instance where BWI's mark was improperly used, explain how BWI was denied the benefits of its contracts, or explain how BWI equipment was improperly used. The complaint provides no factual support for BWI's claim that Defendants engaged in wrongful conduct not protected by the First Amendment.

At the same time, the Court finds no basis for concluding that BWI's complaint has been asserted in bad faith. Nor, given modern notice pleading standards, would BWI's complaint likely be subject to a motion to dismiss. Thus, if the standard for permitting discovery of the John Doe Defendants' identities required only good faith or the ability to survive

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 2091695 (D.Ariz.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 2091695 (D.Ariz.))

Page 5

a motion to dismiss, BWI's proposed discovery would be permitted and the Defendants' First Amendment right to anonymous speech would be defeated. A good faith allegation of wrongdoing, devoid of factual detail, would suffice.

The Court concludes that more is needed before a defendant's First Amendment rights may be eliminated. The Court must examine facts and evidence before concluding that a defendant's constitutional rights must surrender to a plaintiff's discovery needs. The summary judgment standard will ensure that the Court receives such facts and evidence.

Other courts have adopted a multi-part test for determining when plaintiffs should be permitted to discover the identity of anonymous defendants. This test includes "(1) a concrete showing of a *prima facie* claim of actionable harm; (2) the specificity of the discovery request; (3) the absence of alternative means to obtain the subpoenaed information; (4) a central need for the subpoenaed information to advance the claim; and (5) the Doe defendants' expectation of privacy." *UMG,* 2006 WL1343597 at *1 (citing *Sony,* 326 F.Supp.2d at 564-65). The Court views the first element of this test-"a concrete showing of a *prima facie* claim"-as equivalent to the summary judgment standard. *See Dendrite Int'l., Inc. v. Doe,* 775 A.2d 756, 760 (N.J.App.2001) ("[T]he plaintiff must produce sufficient evidence supporting each element of its cause of action, on a prima facie basis, prior to a court ordering the disclosure of the identity of the unnamed defendant."). The Court need not address parts (2)-(4) of this test, as they clearly have been established by BWI. The fifth part of the test-the John Doe Defendants' expectation of privacy-should be addressed in the briefing by the parties discussed below.

*6 In summary, BWI has not made a sufficient showing to justify discovery that will disclose the identities of the John Doe Defendants. BWI may be able to make such a showing in a renewed motion, but it has not done so in the present motion. The Court therefore will deny BWI's motion for expedited discovery.

4. Other Considerations.

If BWI believes that it can satisfy the summary judgment standard, it may seek to do so in a renewed motion to be filed with the Court on or before **August 18, 2006.**In the meantime, the Court will issue BWI's requested motion regarding the preservation of documents. As noted above, there is reason to believe that the information sought by BWI will not be retained by the ISPs or others from whom BWI will seek discovery. The Court will enter BWI's proposed order to preserve such evidence. The Court notes that Mr. Dial did not oppose the entry of such an order.

BWI has asked the Court to require the host of the Internet site to post the preservation order on the site. The Court finds such a requirement unnecessary. BWI may itself make the existence of the order known through its own entry on the site. BWI may also send copies of the preservation order to those from whom it later will seek discovery if the summary judgment standard is satisfied.

If BWI attempts to satisfy the summary judgment standard, BWI should give notice to the John Doe Defendants over the Internet site and afford them an opportunity to oppose the discovery. "When First Amendment interests are at stake, we disfavor *ex parte* discovery requests that afford the Plaintiff the important form of relief that comes from unmasking an anonymous defendant."*Cahill,* 884 A.2d at 461. Therefore, "the plaintiff must undertake reasonable efforts to notify the anonymous defendant of the discovery request and must withhold action to allow the defendant an opportunity to respond."*Id.*

BWI shall notify the anticipated recipients of its discovery requests, as well as the John Doe Defendants, through entries on the Internet site and other reasonable means, that it is seeking discovery of the Defendants' identities and that the potential discov-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                Page 6
Not Reported in F.Supp.2d, 2006 WL 2091695 (D.Ariz.)
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 2091695 (D.Ariz.))**

ery recipients and John Doe Defendants may re-
spond to its motion, should they choose to do so,
within three weeks of the motion's filing. Because
the Court will enter BWI's requested order for pre-
servation of documents, evidence should not be lost
while these steps are undertaken. Upon receipt of
any responses to BWI's renewed motion and the fil-
ing of BWI's reply, the Court will again address the
question of whether discovery of the John Doe De-
fendants' identities should be permitted in this case.

**IT IS ORDERED:**

1. BWI's motion for expedited consideration of mo-
tion to conduct accelerated and expedited discovery
(Doc. # 6) is **granted.**

2. BWI's motion to conduct accelerated and exped-
ited discovery (Doc. # 5) is **denied.**

3. BWI's motion for expedited consideration of mo-
tion for order regarding preservation of documents
(Doc. # 8) is **granted.**

*7 4. BWI's motion for order regarding preserva-
tion of documents (Doc. # 7) is **granted.**The Court
will enter BWI's proposed order separately.

5. H. James Dial's motion to stay all discovery
pending resolution of this motion and Rule 26(f)
conference (Doc. # 11) is **granted** to the extent that
no discovery will occur until after the Court con-
siders BWI's renewed motion for discovery, but is
**denied** to the extent that Mr. Dial seeks a stay of all
discovery until a Rule 26(f) conference has oc-
curred.

D.Ariz.,2006.
Best Western Intern., Inc. v. Doe
Not Reported in F.Supp.2d, 2006 WL 2091695
(D.Ariz.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 3

Westlaw.

Slip Copy
Slip Copy, 2007 WL 2429830 (S.D.Cal.)
(Cite as: 2007 WL 2429830 (S.D.Cal.))

C
Capitol Records, Inc. v. Doe
S.D.Cal.,2007.
Only the Westlaw citation is currently available.
United States District Court,S.D. California.
CAPITOL RECORDS, INC., a Delaware corpora-
tion; Interscope Records, a California general part-
nership; Sony BMG Musica Entertainment, a
Delaware general partnership; UMG Recordings
Inc., a Delaware corporation; BMG Music, a New
York general partnership; Warner Bros. Records
Inc., a Delaware corporation, Plaintiffs,
v.
John DOE, Defendant.
Civil No. 07-cv-1570-JM (POR).
Docket No. 3.

Aug. 24, 2007.

Jonathan Gavin Fetterly, Holme Roberts & Owen,
Los Angeles, CA, for Plaintiffs.

### ORDER GRANTING PLAINTIFFS' EX
### PARTE APPLICATION FOR LEAVE TO
### TAKE IMMEDIATE DISCOVERY

LOUISA S. PORTER, United States Magistrate
Judge.
*1 On August 9, 2007, Plaintiffs filed a complaint
against the Doe Defendant for copyright infringe-
ment, alleging that Defendant used an online media
distribution system to download and distribute
copyrighted works. Plaintiffs do not know the name
of the Doe Defendant, but have identified the
unique Internet Protocol address assigned to De-
fendant at the date and time of the alleged in-
fringing activity and have also identified the Inter-
net Service Provider that provided Defendant with
internet access at the date and time of the alleged
infringing activity. Simultaneous to their complaint,
Plaintiffs have filed an *Ex Parte* Application seek-
ing leave of the Court to serve immediate discovery
on the Internet Service Provider, the University of
California, San Diego, to identify Defendant.

Plaintiffs intend to serve a subpoena pursuant to
Federal Rule of Civil Procedure 45 on the Uni-
versity of California, San Diego, seeking docu-
ments that identify Defendant's true name, current
and permanent addresses and telephone numbers, e-
mail addresses, and Media Access Control ad-
dresses.

In accordance with Federal Rule of Civil Procedure
26(d), discovery does not commence until parties to
an action meet and confer as prescribed by Federal
Rule of Civil Procedure 26(f), unless by court order
or agreement of the parties. A court order permit-
ting early discovery may be appropriate "where the
need for expedited discovery, in consideration of
the administration of justice, outweighs the preju-
dice to the responding party."*Semitool, Inc. v.
Tokyo Electron America, Inc.,* 208 F.R.D. 273, 276
(N.D.Cal.2002).

After reviewing Plaintiffs' *Ex Parte* Application to
take discovery, the declaration of Carlos Linares,
and the accompanying Memorandum of Law, the
Court finds good cause to grant Plaintiffs' Applica-
tion, based on: (1) the allegations of copyright in-
fringement contained in Plaintiffs complaint; (2)
the danger that the University of California, San
Diego will not preserve the information that
Plaintiffs seek; (3) the narrow tailoring of the dis-
covery request so as not to exceed the minimum in-
formation required to advance this lawsuit without
prejudicing the Defendant; and (4) the Court's find-
ing that the expedited discovery requested will sub-
stantially contribute to moving this case forward.
Furthermore, without such discovery, Plaintiffs
cannot identify the Doe Defendant, and thus cannot
pursue their lawsuit to protect their copyrighted
works from infringement. Accordingly, IT IS
HEREBY ORDERED:

1. Plaintiffs may serve immediate discovery on the
University of California, San Diego to obtain the
identity of the Doe Defendant by serving a sub-
poena pursuant to Federal Rule of Civil Procedure

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2429830 (S.D.Cal.)
(Cite as: 2007 WL 2429830 (S.D.Cal.))

45 that seeks information sufficient to identify the
Doe Defendant, including the name, current and
permanent addresses and telephone numbers, e-mail
addresses, and Media Access Control addresses for
the Defendant.

2. Any information disclosed to Plaintiffs in re-
sponse to the subpoena may be used by Plaintiffs
solely for the purpose of protecting Plaintiffs' rights
under the Copyright Act.

*2 3. If the University of California, San Diego
and/or the Defendant wishes to move to quash the
subpoena, they shall do so before the return date of
the subpoena. If such a motion is brought, the Uni-
versity of California, San Diego shall nonetheless
preserve the information sought in the subpoena
pending resolution of such motion.

4. Plaintiffs shall provide a copy of this Order to
the University of California, San Diego when the
subpoena is served.

S.D.Cal.,2007.
Capitol Records, Inc. v. Doe
Slip Copy, 2007 WL 2429830 (S.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

|  |  |
|---|---|
| CAPITOL RECORDS, INC., a Delaware corporation; ARISTA RECORDS, INC., a Delaware corporation; INTERSCOPE RECORDS, a California general partnership; LOUD RECORDS, LLC, a Delaware corporation; UMG RECORDINGS, INC., a Delaware corporation; WARNER BROS. RECORDS INC., a Delaware corporation; ATLANTIC RECORDING CORPORATION, a Delaware corporation; FONOVISA, INC., a California corporation; SONY MUSIC ENTERTAINMENT INC., a Delaware corporation; BMG MUSIC, a New York general partnership; LONDON-SIRE RECORDS INC., a Delaware corporation; MOTOWN RECORD COMPANY, L.P., a California limited partnership; PRIORITY RECORDS LLC, a California limited liability company; MAVERICK RECORDING COMPANY, a California joint venture; ELEKTRA ENTERTAINMENT GROUP INC., a Delaware corporation; and VIRGIN RECORDS AMERICA, INC., a California corporation, | : : : : Civil Action No.: 04 CV 472 (LAK)(HBP) : : : : : : : : : : |
| Plaintiffs, | : |
| -against- | : |
| DOES 1 - 250, | : |
| Defendants. | : x |

---------------------------------------------------------------x

## [PROPOSED] ORDER GRANTING PLAINTIFFS' *EX PARTE* APPLICATION TO TAKE IMMEDIATE DISCOVERY

Upon the *ex parte* application of Plaintiffs to take immediate discovery, the annexed

declaration of Jonathan Whitehead and the exhibit thereto, the annexed declaration of J.

Christopher Jensen, Esq., and the accompanying Memorandum of Law, it is hereby:

ORDERED that Plaintiffs may serve immediate discovery on Time Warner Cable to obtain the identity each Doe Defendant by requesting the name, address, telephone number, e-mail address, and Media Access Control addresses for each Defendant. ~~The disclosure of this information is ordered pursuant to 47 U.S.C. § 551(c)(2)(B).~~

IT IS FURTHER ORDERED THAT any information disclosed to Plaintiffs in response to the discovery requests may be used by Plaintiffs solely for the purpose of protecting Plaintiffs' rights under the Copyright Act.

Dated: _1/26/04_

_____
United States District Judge

# TAB 5



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

ELEKTRA ENTERTAINMENT GROUP INC., a
Delaware corporation; CAPITOL RECORDS,
INC., a Delaware corporation; ATLANTIC
RECORDING CORPORATION, a Delaware
corporation; INTERSCOPE RECORDS, a
California general partnership; ARISTA
RECORDS, INC., a Delaware corporation;
MOTOWN RECORD COMPANY, L.P., a
California limited partnership; WARNER BROS.
RECORDS INC., a Delaware corporation; UMG
RECORDINGS, INC., a Delaware corporation;
MAVERICK RECORDING COMPANY, a
California joint venture; SONY MUSIC
ENTERTAINMENT INC., a Delaware
corporation; VIRGIN RECORDS AMERICA,
INC., a California corporation; and BMG MUSIC,
a New York general partnership,

Plaintiffs,

-against-

DOES 1-9,

Defendants.

------------------------------------------------------x

Civil Action No.: 



## [PROPOSED] ORDER GRANTING PLAINTIFFS' *EX PARTE* APPLICATION TO TAKE IMMEDIATE DISCOVERY



Upon the *ex parte* application of Plaintiffs to take immediate discovery, the

annexed declaration of Jonathan Whitehead and the exhibit thereto, the annexed declaration of J.

Christopher Jensen, Esq., and the accompanying Memorandum of Law, it is hereby:

ORDERED that Plaintiffs may serve immediate discovery on New York

University to obtain the identity of each Doe Defendant by serving a Rule 45 subpoena that seeks

MICROFILM
MAR 2 4 2004
9:00 AM

information sufficient to identify each Doe Defendant, including the name, address, telephone

number, e-mail address, and Media Access Control addresses for each Defendant.

IT IS FURTHER ORDERED THAT any information disclosed to Plaintiffs in

response to the Rule 45 subpoena may be used by Plaintiffs solely for the purpose of protecting

Plaintiffs' rights under the Copyright Act.

Dated: 3-23-04

_____
United States District Judge

2

# TAB 6

Westlaw.

Slip Copy                                                                              Page 1
Slip Copy, 2007 WL 2900210 (D.Kan.)
(Cite as: 2007 WL 2900210 (D.Kan.))

**H**
Interscope Records v. Does 1-14
D.Kan.,2007.
    Only the Westlaw citation is currently avail-
able.INTERSCOPE RECORDS, a California gener-
al partnership; Arista Records LLC, a Delaware
limited liability company; Atlantic Recording Cor-
poration, a Delaware corporation; BMG music, a
New York general partnership; Capital Records,
Inc., a Delaware corporation; Elektra Entertainment
Group Inc., a Delaware corporation; Laface Re-
cords LLC, a Delaware limited liability company;
Motown Record Company, L.P., a California lim-
ited partnership; Sony BMG Music Entertainment,
a Delaware general partnership; UMG Recordings,
Inc., a Delaware corporation; Virgin Records
America, Inc., a California corporation; Warner
Bros. Records Inc., a Delaware corporation; and
Zomba Recording LLC, a Delaware limited liability
company, Plaintiffs,
v.
DOES 1-14, Defendants.
Civil Action No. 5:07-4107-RDR.

Oct. 1, 2007.

Joan K. Archer, Kevin M. Kuhlman, Lathrop &
Gage, LC, Kansas City, MO, for Plaintiffs.

**ORDER GRANTING PLAINTIFFS' *EX PARTE*
APPLICATION FOR LEAVE TO TAKE IM-
MEDIATE DISCOVERY**

K. GARY SEBELIUS, U.S. Magistrate Judge.
*1 The instant motion comes before the court upon
plaintiffs' Ex Parte Application for Leave to Take
Immediate Discovery (Doc. 3) and Memorandum in
Support (Doc. 4).

Plaintiffs filed a complaint alleging copyright in-
fringement against various Doe Defendants and
now seek to ascertain their identify by service of a
Rule 45 subpoena on the University of Kansas
seeking documents that identify each Doe Defend-
ant, including the name, current (and permanent)
addresses and telephone numbers, e-mail addresses,
and Media Access Control addresses for each de-
fendant.

Plaintiff has attached several orders from other
courts in the Tenth Circuit allowing this sort of *ex
parte* discovery prior to the parties' 26(f) confer-
ence wherein plaintiffs have alleged copyright in-
fringement of song recordings.[FN1] In support of
the instant motion, plaintiffs attach the Affidavit of
Carlos Linares, Vice President for Anti-Piracy Leg-
al Affairs for the Recording Industry Association of
America, Inc. ("RIAA"). Mr. Linares explains that
immediate discovery is warranted in the instant
case because (1) prompt identification of infringers
is necessary for copyright owners to take quick ac-
tion (2) infringement of this nature often involves
sound recordings that have not yet been distributed
publicly (3) without expedited discovery plaintiff
cannot identify defendants' names, address, or e-
mail addresses; and (4) Internet Service Providers
(ISPs) have different policies pertaining to the
length of time they preserve "logs" which identify
their users; this time period can range from as short
as a few days to a few months before they erase the
data.[FN2]

    FN1. Memorandum in Support (Doc. 4) at
    (Exhibit B).

    FN2.*Id.* at (Exhibit A) p. 8-9.

Generally, unless the parties agree otherwise or
upon authorization of the court, "a party may not
seek discovery from any source before the parties
have conferred as required by Rule 26(f)[.]"[FN3]
However, "Rule 26(d) of the Federal Rules of Civil
Procedure allows a court to order expedited discov-
ery upon a showing of 'good cause.' " [FN4] Good
cause can exist in cases involving claims of in-
fringement and unfair competition.[FN5]Sufficient
good cause can also exist "where physical evidence
may be consumed or destroyed with the passage of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2900210 (D.Kan.)
(Cite as: 2007 WL 2900210 (D.Kan.))

time, thereby disadvantaging one or more parties to the litigation." [FN6]In considering the good cause standard in the context of Rule 26(d) the court should also evaluate the scope of the requested discovery.[FN7]

FN3.Fed.R.Civ.P. 26(d).

FN4.*Koch Carbon, LLC v. Isle Capital Corp.,* No. 05-1010-MLB, 2006 U.S. Dist. LEXIS 36962 (D.Kan.2006) (citing *Pod-Ners, LLC v. Northern Feed & Bean of Lucerne Ltd.,* 204 F.R.D. 675, 676 (D.Colo.2002)).

FN5.*Pod-Ners,* 204 F.R.D. at 676. *See also Qwest Communs. Int'l Inc. v. Worldquest Networks, Inc.,* 213 F.R.D. 418, 419 (D.Colo.2003)("The good cause standard may be satisfied where a party seeks a preliminary injunction, or where the moving party has asserted claims of infringement and unfair competition.") (citations omitted).

FN6.*Quest Communs. Int'l Inc.,* 213 F.R.D. at 419.

FN7.*Id.* at 420.

In the instant case, the court finds plaintiffs have demonstrated sufficient good cause so as to warrant *ex parte* discovery prior to the parties' Rule 26(f) conference. Because the "logs" which identify the alleged infringers could be erased within mere days, the physical evidence of the alleged infringers' identity and incidents of infringement could be destroyed to the disadvantage of plaintiffs. Moreover, at this point, because plaintiffs seek very specific information regarding a certain group of likely readily identifiable people, the court finds the scope of the discovery sought sufficiently narrow.FN8

FN8. However, with further evidence or argument by the University of Kansas pursuant to a motion to quash, the court could

reconsider its position on this point.

*2 The court recognizes the recent amendment to the Federal Rules of Civil Procedure pertaining to the discovery of Electronically Stored Information, or ESI, and counsels the parties to consider these additions when addressing further discovery. However, the court has reviewed the changes to the Federal Rules, and in particular Rule 45, and has found no necessary prohibition to the relief plaintiffs seek.

However, because this motion is *ex parte* the court will allow the University of Kansas the opportunity to seek to quash the subpoena.[FN9]

FN9.*See e.g.,* Memorandum in Support (Doc. 4) at (Exhibit B) p. 24, 28 (orders from district courts in the Tenth Circuit specifically providing the third-party the opportunity to quash the subpoena).

Accordingly, for good cause shown,

IT IS THEREFORE ORDERED that plaintiffs' Ex Parte Application for Leave to Take Immediate Discovery (Doc. 3) is granted. Plaintiffs may serve a Rule 45 subpoena upon the University of Kansas that seeks information sufficient to identify each Doe Defendant's, name, current (and permanent) addresses and telephone numbers, e-mail addresses, and Media Access Control addresses for each Defendant. The disclosure of this information is consistent with the University of Kansas' obligations under 20 U.S.C. 1232g.

IT IS FURTHER ORDERED that any information disclosed to plaintiffs in response to the Rule 45 subpoena may be used by plaintiffs solely for the purpose of protecting plaintiffs' rights under the Copyright Act.

IT IS FURTHER ORDERED that plaintiffs shall serve the University of Kansas with a copy of this Order as well as plaintiffs' Motion and Memorandum in Support along with the subpoena. If the University of Kansas wishes to move to quash the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2900210 (D.Kan.)
**(Cite as: 2007 WL 2900210 (D.Kan.))**

subpoena it may do so within ten days of being
served with it.

IT SO ORDERED.

D.Kan.,2007.
Interscope Records v. Does 1-14
Slip Copy, 2007 WL 2900210 (D.Kan.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 7

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

INTERSCOPE RECORDS, et al.,        )
    Plaintiffs,                )
                   )
    v.                         )        C.A. No. 04-12435-NG
                   )
JOHN DOE,                          )
    Defendant.                 )

GERTNER, D.J.:

ORDER RE: EXPEDITED DISCOVERY
December 9, 2004

Upon consideration of plaintiffs' Motion for Leave to Take Immediate Discovery [Document #3], and plaintiffs' supporting memorandum and declaration [Documents ## 4,5], plaintiffs' Motion is hereby **GRANTED**. It is further **ORDERED** as follows:

1. Plaintiffs may take immediate discovery of Boston College to obtain the identity of Doe defendant by serving a Rule 45 subpoena that seeks information sufficient to identify Doe defendant, including name, address, telephone number, e-mail address, and Media Access Control addresses for defendant. No further information about Doe defendant shall be revealed;

2. Plaintiffs may use the information obtained by this Rule 45 subpoena solely for the purpose of protecting plaintiffs' rights under the Copyright Act;

3. Plaintiffs shall attach the Court Directed Notice Regarding Issuance of Subpoena, a copy of which is attached to this Order, to their Rule 45 subpoena. The

Rule 45 subpoena shall instruct Boston College to distribute a copy of the Notice to Doe defendant within seven days of service of the subpoena.

4. Boston College shall not respond to the Rule 45 subpoena until fourteen days after Doe defendant has received the Notice.

5. Any future notices to any defendant in this case or any related case filed in the District of Massachusetts must be pre-approved by the Court and filed in the record.

SO ORDERED.

Dated: December 9, 2004        __s/ NANCY GERTNER U.S.D.J.__

COURT-DIRECTED NOTICE
REGARDING ISSUANCE OF SUBPOENA

A subpoena has been issued directing Boston College, your Internet Service Provider ("ISP") to disclose your name. The subpoena has been issued because you have been sued in the United States District Court for the District of Massachusetts in Boston, Massachusetts, as a "John Doe" by several major record companies. You have been sued for infringing copyrights on the Internet by uploading and/or downloading music. The record companies have identified you only as a "John Doe" and have served a subpoena on your ISP to learn your identity. This notice is intended to inform you of some of your rights and options.

YOUR NAME HAS NOT YET BEEN DISCLOSED.
YOUR NAME WILL BE DISCLOSED IN 14 DAYS IF YOU DO NOT
CHALLENGE THE SUBPOENA

Your name has not yet been disclosed. The record companies have given the Court enough information about your alleged infringement to obtain a subpoena to identify you, but the Court has not yet decided whether you are liable for infringement. You can challenge the subpoena in Court. You have 14 days from the date that you received this notice to file a motion to quash or vacate the subpoena. If you file a motion to quash the subpoena, your identity will not be disclosed until the motion is resolved (and the companies cannot proceed against you until you are identified). The second page of this notice can assist you in locating an attorney, and lists other resources to help you determine how to respond to the subpoena. If you do not file a motion to quash, at the end of the 14 day period, your ISP will send the record company plaintiffs your identification information.

OTHER ISSUES REGARDING THE LAWSUIT AGAINST YOU

To maintain a lawsuit against you in the District Court of Massachusetts, the record companies must establish jurisdiction over you in Massachusetts. If you do not live or work in Massachusetts, or visit the state regularly, you may be able to challenge the Massachusetts court's jurisdiction over you. If your challenge is successful, the case in Massachusetts will be dismissed, but the record companies may be able to file against you in another state where there is jurisdiction.

The record companies may be willing to discuss the possible settlement of their claims against you. The parties may be able to reach a settlement agreement without your name appearing on the public record. You may be asked to disclose your identity to the record companies if you seek to pursue settlement. If a settlement is reached, the case against you will be dismissed. It is possible that defendants who seek to settle at the beginning of a case will be offered more favorable settlement terms by the record companies. You may contact the record companies' representatives by phone at (617) 832-1000, or by fax at (617) 832-7000.

You may also wish to find your own lawyer (see resource list below) to help you evaluate whether it is in your interest to try to reach a settlement or to defend against the lawsuit.

## RESOURCE LIST

The organizations listed below provide guidance on how to find an attorney.  If you live in or near Massachusetts or Boston, the second and third listings below provide referrals for local attorneys.

American Bar Association
http://www.abanet/org/legalservices/findlegalhelp/home.htm

Massachusetts Bar Association
http://www.massbar.org
Lawyer referral service - (617) 338-0610

Boston Bar Association
http://www.bostonbar.org
Lawyer referral service - (617) 742-0625

The organizations listed below have appeared before other courts around the country in similar lawsuits as "friends of the court" to attempt to protect what they believe to be the due process and First Amendment rights of Doe defendants.

Electronic Frontier Foundation
454 Shotwell Street
San Francisco, California 94110-1914
email: RIAAcases@eff.org

Public Citizen
1600 20th Street, NW
Washington, DC 20009
phone: (202) 588-7721
email: litigation@citizen.org

# TAB 8

# Westlaw.

Slip Copy
Slip Copy, 2007 WL 2867351 (W.D.Mich.)
(Cite as: 2007 WL 2867351 (W.D.Mich.))

**H**
LaFace Records, LLC v. Does 1-5
W.D.Mich.,2007.
Only the Westlaw citation is currently available.
United States District Court,W.D.
Michigan,Southern Division.
LaFACE RECORDS, LLC, a Delaware limited liability company; Atlantic Recording Corporation, a Delaware corporation; Bmg Music, a New York general partnership; Capitol Records, Inc., a Delaware corporation; Elektra Entertainment Group, Inc., a Delaware corporation; Interscope Records, a California general partnership; Maverick Recording Company, a California joint venture; Priority Records, LLC, a California limited liability company; Sony Bmg Music Entertainment, a Delaware general partnership; Umg Recordings, Inc., a Delaware corporation; and Warner Bros. Records, Inc., a Delaware corporation, Plaintiffs,
v.
DOES 1-5, Defendants.
No. 2:07-cv-187.

Sept. 27, 2007.

Jason Randall Gourley, Soble Rowe & Krichbaum LLP, Ann Arbor, MI, for Plaintiffs.

*OPINION SUPPORTING ORDER GRANTING PLAINTIFFS' EX PARTE APPLICATION FOR LEAVE TO TAKE IMMEDIATE DISCOVERY*

PAUL L. MALONEY, United States District Judge.
*1 Plaintiffs, various members of the music recording industry, filed a complaint against five unknown individuals for copyright infringement. With the complaint, Plaintiffs filed an application for leave to take immediate discovery under Federal Rules of Civil Procedure 26 and 45. (Dkt. No. 2).

Plaintiffs allege the five unknown Defendants used peer-to-peer (P2P) online file sharing systems to download or distribute Plaintiffs' copyrighted music. Plaintiffs have identified the computer used by each of the five defendants for the infringing activities by eleven digit Internet Protocol (IP) address. Furthermore, Plaintiffs have provided a list of some of the songs that were improperly downloaded or distributed at each IP address. (Exhibit A to complaint). Plaintiffs allege Defendants have illegally downloaded or distributed hundreds of files each and, in one case, over 1700 files. (Exhibit A to complaint). The IP addresses were distributed by Northern Michigan University (NMU), the third party internet service provider (ISP). Plaintiffs request leave to subpoena information from NMU identifying Defendants.

## I. DISCOVERY RULES

A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f). Fed.R.Civ.P. 26(d). Some courts have held that a court, under its broad discretion to manage discovery, may order expedited discovery prior to a Rule 26 hearing upon a showing of good cause. *Quest Commc'n Int'l, Inc. v. Worldquest Networks, Inc.,* 213 F.R.D. 418, 419 (D.Colo.2003); *Pod-ners, LLC v. N. Feed & Bean of Lucern LLC,* 204 F.R.D. 675, 676 (D.Colo.2002). Within the Sixth Circuit, this Court has found no published cases addressing this proposition of law, although there are several unpublished cases. *See e.g. In re Paradise Valley Holdings,* No. 03-34704, 2005 WL 3841866 (Bankr.E.D.Tenn. Dec.29, 2005) and *Whitfield v. Hochsheid,* No. C-1-02-218, 2002 WL 1560267 (S.D.Ohio 2002). This Court notes the pending changes to Rule 26(d) specifically authorize discovery prior to a Rule 26 hearing "by court order." Fed.R.Civ.P. 26(d)(1) (proposed amendment effective Dec. 1, 2007 absent contrary Congressional action). This Court finds the reasoning in *Quest* persuasive and adopts the holding. Plaintiffs have been able to establish good cause in situations involving requests for a preliminary injunction and where the moving party alleges infringement. (citations omitted).*Quest,* 213 F.R.D. at 419.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2867351 (W.D.Mich.)
(Cite as: 2007 WL 2867351 (W.D.Mich.))

Page 2

A number of district courts have found good cause to permit expedited discovery where the recording industry has IP addresses for individuals who have illegally distributed or downloaded music, but do not have the name of the person whose computer was assigned that address. *See Capitol Records, Inc. v. Doe,* No. 07-cv-1570, 2007 WL 2429830 (S.D.Cal. Aug.24, 2007) (granting subpoena for information from University of California, San Diego); *Warner Bros ., Records Inc. v. Does 1-4,* No. 2:07-cv-424, 2007 WL 1960602 (D.Utah July 5, 2007) (granting subpoena for information from Off Campus Telecommunications); *Warner Bros. Records, Inc. v. Does 1-20,* No. 07-cv-1131, 2007 WL 1655365 (D.Colo. June 5, 2007) (granting subpoena for information from Quest Communications); *Arista Records, LLC v. Does 1-9,* No. 07-cv-628, 2007 WL 1059049 (D.Colo. April 4, 2007). Courts typically find good cause based upon (1) allegations of copyright infringement, (2) the danger that the ISP will not preserve the information sought; (3) the narrow scope of the information sought, and (4) the conclusion that expedited discovery would substantially contribute to moving the case forward. *See e.g. Capital Records, Inc.* 2007 WL 2429830 at *1. Plaintiffs have also provided this Court with copies of fourteen orders issued over the past two years by district courts within the Sixth Circuit permitting expedited discovery under almost identical circumstances. (Exhibit B to memorandum).

*2 Plaintiffs have not acknowledged that courts occasionally deny similar requests. Based on the authority cited above, this Court agrees with Plaintiffs that discovery to allow the identity of "Doe" defendants is "routine." (Plaintiffs' memorandum in support at 5). However, this Court would be remiss if it did not discuss authority counter to Plaintiffs' request. In *Capital Records, Inc. v. Does 1-16,* No. 07-485, 2007 WL 1893603 (D.N.M. May 24, 2007), the court denied an identical request to issue a subpoena for information from the University of New Mexico. The court cited privacy concerns of the individuals whose names were sought and the

plaintiff's inability to identify an irreparable harm as damages could easily cure any alleged copyright infringement. *Id.* at *1. Two circuit courts have rejected subpoenas sought by the recording industry under the Digital Millennium Copyright Act (DMCA).*Charter Commc'n Inc., Subpoena Enforcement Matter,* 393 F.3d 771 (8th Cir.2005).*Recording Indust. Ass'n of America, Inc. v. Verizon Internet Services, Inc.,* 351 F.3d 1229 (D.C.Cir.2003). In both cases the courts concluded the ISP was only a conduit for file sharing in P2P systems and that conduit ISPs were not one of the types of ISPs for which subpoenas could be issued. *See also In re Subpoena to Univ. of North Carolina at Chapel Hill,* 367 F.Supp.2d 945 (M.D.N.C.2005). This Court is also aware that the recording industry has sought subpoenas under the Cable Communication Policy Act (CCPA).*Interscope Records v. Does 1-7,* 494 F.Supp.2d 388 (E.D.Va.2007) (denying request for subpoena for information from William and Mary College under CCPA and DMCA); *UMG Recordings, Inc. v. Does 1-4,* No. 06-652, 2006 WL 1343597 (N.D.Cal. March 6, 2006) (finding it unnecessary to decide the request under the CCPA and ordering the ISP to provide its subscribers with a copy of the subpoena before releasing the information, a protection which would be consistent with both the provisions of the CCPA and Rule 45)..

The provisions and guidelines for issuing a subpoena are found under Fed.R.Civ.P. 45. Rule 45 permits persons subject to a subpoena to file a motion to quash or modify the subpoena on various grounds. Fed.R.Civ.P. 45(c)(3)(A). Two courts have upheld subpoenas issued under remarkably similar circumstances. *See Elektra Entm't Group, Inc. v. Does 1-9,* No. 04-cv-2289, 2004 WL 2095581 (S.D.N.Y. Sept.8, 2004) (upholding subpoena as not overburdening rights under the First Amendment) and *Sony Music Entm't Inc. v. Does 1-40,* 326 F.Supp.2d 556 (S.D.N.Y.2004) (finding that P2P file sharing is entitled to some level of First Amendment protection, but that the balance of interests weighed in favor of the subpoena because

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2867351 (W.D.Mich.)
(Cite as: 2007 WL 2867351 (W.D.Mich.))

(1) plaintiff made a prima facia claim of copyright infringement, (2) the discovery request was sufficiently specific, (3) there was an absence of alternative means of obtaining the information, (4) there was a need for the information in order to pursue the action, and (5) there was only a minimal expectation of privacy under the ISP's terms of service).

II. ANALYSIS

*3 Plaintiffs argue P2P networks allow users to distribute and download millions of music files every month in violation of copyright laws. Plaintiffs assert good cause for this Court to issue a subpoena because (1) they have alleged a prima facia claim of copyright infringement, (2) ISPs typically retain activity logs for a limited period of time, (3) the discovery request is narrowly tailored, and (4) the information is necessary to move the case forward. Plaintiffs also request this Court clarify that the subpoena would not interfere with NMU's obligations under the Family Educational Rights and Privacy Act, 20 U.S.C. 1232g (FERPA). Plaintiffs intend to serve a subpoena on NMU requesting documents that would identify each Defendant's true name, address (current and permanent), telephone number, email address, and Media Access Control (MAC) address.

This Court finds Plaintiffs have established good cause for departing from the usual course of discovery. Specifically, this Court finds (1) Plaintiffs have alleged copyright infringement, (2) there is a possibility that the ISP might delete or otherwise destroy the activity logs which are necessary to identify the individuals who have been downloading or distributing music files, (3) the discovery request is narrowly tailored, and (4) the identity of the individuals is necessary to move the case forward and without this information, Plaintiffs would not be able to determine the identities of Defendants.

This Court declines to find that the subpoena is consistent with Northern Michigan University's obligations under FERPA. The issue has not been briefed, it is unnecessary for this order, and NMU should be afforded an opportunity to speak on the issue if it elects to do so.

This Court also finds merit in the District Court of New Mexico's concern for the privacy of the various individuals who may be identified. This Court agrees it would be preferable for PLAINTIFFS to request the information from the ISP *prior* to filing this request in an effort to secure the information without resort to the courts. Therefore, this Court GRANTS PLAINTIFFS' Application for Leave to Take Immediate Discovery (Dkt. No. 2),WITH MODIFICATIONS.As the application was brought ex parte, both the ISP and the individuals who may be implicated should have an opportunity to move to quash or modify the subpoena. An order consistent with this opinion has been contemporaneously filed with this opinion.

W.D.Mich.,2007.
LaFace Records, LLC v. Does 1-5
Slip Copy, 2007 WL 2867351 (W.D.Mich.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 9

CLOSED

# United States District Court
# District of Massachusetts (Boston)
## CIVIL DOCKET FOR CASE #: 1:07-cv-10592-JLT

Merrimack Pharmaceuticals, Inc. V. Ronald N. Kotula
Assigned to: Judge Joseph L. Tauro
Demand: $75,000
Cause: JS 44 Sec. IV - no matching citation currently in
database

Date Filed: 03/27/2007
Date Terminated: 09/27/2007
Jury Demand: Plaintiff
Nature of Suit: 890 Other Statutory
Actions
Jurisdiction: Federal Question

**Plaintiff**

**Merrimack Pharmaceuticals, Inc.**          represented by **Deborah S. Birnbach**
Goodwin Procter LLP
Exchange Place
53 State Street
Boston, MA 02109
617-570-1339
Fax: 617-523-1231
Email:
DBirnbach@goodwinprocter.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elianna J. Marziani**
Goodwin Procter LLP
Exchange Place
53 State Street
Boston, MA 02109
617-570-1914
Fax: 617-523-1231
Email:
emarziani@goodwinprocter.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**John Doe**
*TERMINATED: 06/11/2007*

**Defendant**

**Ronald N. Kotula**

| Date Filed | # | Docket Text |
|------------|---|-------------|

| 03/27/2007 | 1 | COMPLAINT against John Doe Filing fee: $ 350, receipt number 1461584, filed by Merrimack Pharmaceuticals, Inc.. (Attachments: # 1 Civil Cover Sheet # 2 Civil Category Sheet)(Birnbach, Deborah) (Entered: 03/27/2007) |
| 03/27/2007 | 2 | CORPORATE DISCLOSURE STATEMENT by Merrimack Pharmaceuticals, Inc.. (Birnbach, Deborah) (Entered: 03/27/2007) |
| 03/28/2007 | | Summons Issued as to John Doe. (Johnson, Jay) (Entered: 03/28/2007) |
| 03/28/2007 | | ELECTRONIC NOTICE of Case Assignment. Judge Joseph L. Tauro assigned to case. If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge Sorokin (Johnson, Jay) (Entered: 03/28/2007) |
| 03/28/2007 | 3 | MOTION For Leave To Take Expedited Discovery by Merrimack Pharmaceuticals, Inc.. (Attachments: # 1 Text of Proposed Order)(Birnbach, Deborah) (Entered: 03/28/2007) |
| 03/28/2007 | 4 | MEMORANDUM in Support re 3 MOTION For Leave To Take Expedited Discovery filed by Merrimack Pharmaceuticals, Inc.. (Attachments: # 1 Exhibit A# 2 Exhibit B)(Birnbach, Deborah) (Entered: 03/28/2007) |
| 03/28/2007 | 5 | MOTION For An Expedited Hearing On Plaintiff's Motion For Leave To Take Expedited Discovery by Merrimack Pharmaceuticals, Inc.. (Attachments: # 1 Text of Proposed Order)(Birnbach, Deborah) (Entered: 03/28/2007) |
| 03/28/2007 | 6 | Judge Joseph L. Tauro : ORDER entered 5 Motion for an Expedited Hearing is DENIED. (Abaid, Kim) (Entered: 03/28/2007) |
| 03/28/2007 | 7 | DECLARATION re 3 MOTION For Leave To Take Expedited Discovery *(Declration of Robert J. Mulroy)* by Merrimack Pharmaceuticals, Inc.. (Attachments: # 1 Exhibit A)(Birnbach, Deborah) (Entered: 03/28/2007) |
| 03/28/2007 | | Judge Joseph L. Tauro : Electronic ORDER entered 3 Motion for Leave to Take Expedited Discovery is ALLOWED. (Abaid, Kim) (Entered: 03/29/2007) |
| 04/09/2007 | 8 | MOTION for Refund of Fees Paid Electronically by Merrimack Pharmaceuticals, Inc.. (Attachments: # 1 Exhibit A# 2 Exhibit B)(Birnbach, Deborah) (Entered: 04/09/2007) |
| 04/20/2007 | 9 | MOTION for Leave to Take Expedited Discovery (Renewed) by Merrimack Pharmaceuticals, Inc.. (Attachments: # 1 Text of Proposed Order)(Birnbach, Deborah) (Entered: 04/20/2007) |
| 04/20/2007 | 10 | MEMORANDUM in Support re 9 MOTION for Leave to Take Expedited Discovery (Renewed) filed by Merrimack Pharmaceuticals, Inc.. (Attachments: # 1 Ex. A (Hicks Declaration)# 2 Ex. B (Birnbach Declaration))(Birnbach, Deborah) (Entered: 04/20/2007) |
| 04/25/2007 | | Judge Joseph L. Tauro : Electronic ORDER entered granting 9 Motion Leave to Take Expedited Discovery (Lovett, Zita) (Entered: 04/25/2007) |
| 05/23/2007 | 11 | Judge Joseph L. Tauro : ORDER entered granting 8 Motion for Refund of Fees Paid Electronically (Abaid, Kimberly) (Entered: 05/23/2007) |
| 06/08/2007 | 12 | NOTICE of Appearance by Elianna J. Marziani on behalf of Merrimack Pharmaceuticals, Inc. (Marziani, Elianna) (Entered: 06/08/2007) |

| 06/08/2007 | 13 | AMENDED COMPLAINT against Ronald N. Kotula, filed by Merrimack Pharmaceuticals, Inc..(Birnbach, Deborah) (Entered: 06/08/2007) |
|---|---|---|
| 06/08/2007 | 14 | DECLARATION re 13 Amended Complaint *(Declaration of Deborah S. Birnbach in Support of Amended Complaint)* by Merrimack Pharmaceuticals, Inc.. (Attachments: # 1 Ex. A# 2 Ex. B# 3 Ex. C# 4 Ex. D)(Birnbach, Deborah) (Entered: 06/08/2007) |
| 06/08/2007 | 15 | MOTION For Leave to Take Expedited Discovery by Merrimack Pharmaceuticals, Inc.. (Attachments: # 1 Text of Proposed Order)(Birnbach, Deborah) (Entered: 06/08/2007) |
| 06/08/2007 | 16 | MEMORANDUM in Support re 15 MOTION For Leave to Take Expedited Discovery filed by Merrimack Pharmaceuticals, Inc.. (Attachments: # 1 Ex. A# 2 Ex. B)(Birnbach, Deborah) (Entered: 06/08/2007) |
| 06/11/2007 | | Summons Issued as to Ronald N. Kotula. (Abaid, Kimberly) (Entered: 06/11/2007) |
| 06/20/2007 | | ELECTRONIC NOTICE of Duplicate Filing Fee and Credit for Refund, for $350.00 paid on 03/27/2007, receipt number 1461584. (Adam, Lucien) (Entered: 06/20/2007) |
| 06/28/2007 | 17 | SUMMONS Returned Executed Ronald N. Kotula served on 6/23/2007, answer due 7/13/2007. (Birnbach, Deborah) (Entered: 06/28/2007) |
| 07/16/2007 | 18 | SUGGESTION OF BANKRUPTCY Upon the Record as to Ronald N. Kotula by Ronald N. Kotula. (Abaid, Kimberly) (Entered: 07/16/2007) |
| 09/27/2007 | 19 | Judge Joseph L. Tauro : ORDER entered. ORDER For Closure.(Abaid, Kimberly) (Entered: 09/27/2007) |
| 06/05/2008 | 20 | Joint MOTION to Reopen Case *and Enter Permanent Injunction by Consent* by Merrimack Pharmaceuticals, Inc., Ronald N. Kotula. (Attachments: # 1 Exhibit A - Permanent Injunction by Consent, # 2 Exhibit B - Order Granting Relief from Automatic Stay)(Birnbach, Deborah) (Entered: 06/05/2008) |
| 06/05/2008 | | Judge Joseph L. Tauro: Electronic ORDER entered granting 20 Joint MOTION to Reopen Case and Enter Permanent Injunction (York, Steve) (Entered: 06/05/2008) |
| 06/05/2008 | 21 | Judge Joseph L. Tauro: ORDER entered. Permanent Injunction (York, Steve) (Entered: 06/05/2008) |

# TAB 10

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MOLDFLOW CORPORATION,          )
MOLDFLOW PTY LTD. AND          )
MOLDFLOW IRELAND LTD.          )
                               )
                               )
v.                             )          Civil Action No. 07-cv-10722 (RCL)
                               )
JOHN DOES 1 - 154              )
                               )
                               )

[PROPOSED] ORDER

AND NOW, this 5 day of August, 2007, upon consideration of Moldflow Corporation,

Moldflow Pty Ltd. And Moldflow Ireland's (collectively, "Moldflow")'s Motion to Enlarge

Time to Serve Complaint and For Additional Expedited Discovery ("Motion"), for good cause

shown, it is hereby ORDERED that Moldflow's motion is GRANTED and,

    (1)    Moldflow's time to serve the Complaint in this matter shall expire on February

11, 2008.

    (2)    Moldflow may serve third-party subpoenas *duces tecum* on ISPs for subscriber

information in connection with particular IP Addresses identified though analysis of the data

transmissions received by Moldflow's computers, including but not limited to those identified as

providing internet access to the IP Addresses listed in Exhibit A to this Motion, and may serve

subpoenas *duces tecum* on the IP subscribers whose information is provided by these ISPs.

    (3)    In regard to any ISP that is also a cable television provider, the disclosure of this

information is ordered pursuant 47 U.S.C. § 551(c)(2)(B).

LIBA/1821704.1

(4)     Any information disclosed to Moldflow in response to the subpoenas *duces tecum*

shall be sued by Moldflow solely for the purpose of protecting its right under the applicable

patent and copyright statutes.

Dated: ~~August~~ __, 2007

SO ORDERED:

United States District Judge

LIBA/1821704.1

# TAB 11

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/16/05

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
MOTOWN RECORDS COMPANY, L.P.,
et al.,

               Plaintiffs,

    - against -

DOES 1-99,

               Defendants.
------------------------------X

                      **O R D E R**

                  05 Civ. 9112 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    Plaintiffs having moved for expedited discovery based upon the supporting Memorandum of Law, and the declarations of Maryann Penney and Jonathan E. Whitehead and the exhibits thereto, this Court having found that there is good cause for expedited discovery, it is hereby

    **ORDERED** that:

    1. Plaintiffs may serve immediate discovery on Time Warner Cable ("Time Warner") to obtain the identity of Doe defendants 1-99 by serving a Rule 45 subpoena that seeks information sufficient to identify each Doe defendant including the name, address, telephone number, e-mail address and Media Access Control address for each defendant.

    2. If and when Time Warner is served with a subpoena, within five business days thereof, it shall give notice (notice via e-mail is sufficient) of the subpoena to the subscribers in

question.  If Time Warner and/or any defendant wishes to quash the subpoena, the party must do so before the return date of the subpoena, which will be 15 business days from the date of service.

3.  If and when Time Warner is served with a subpoena, Time Warner shall immediately preserve the subpoenaed information in question pending the resolution of any timely-filed motion to quash.

4.  Counsel for plaintiffs shall provide a copy of this Order to Time Warner along with the subpoena.

5.  The disclosure of this information is ordered pursuant to 47 U.S.C. §551 (c)(2)(B), which authorizes cable operators to disclose personally identifiable information when the cable operators are ordered to do so by a court, and it is further

**ORDERED** that any information disclosed to plaintiffs in response to the Rule 45 subpoena shall be used solely for the purpose of protecting plaintiffs' rights under the Copyright Act.

Dated:    New York, New York
          December 15, 2005

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

Copies of the foregoing Order have been mailed and faxed on this
date to the following:

<u>Counsel for Plaintiff</u>s
Maryann E. Penney, Esq.
COWAN, LIEBOWITZ & LATMAN, P.C.
1133 Avenue of the Americas
New York, NY   10036-6799

# TAB 12

to the plaintiff's request for prejudgment interest nor to the proposed rate of 9%, and the CBA in this case did indicate that any arbitration award was "final and binding upon the parties and the employee(s) or Employer(s) involved." (CBA at Art. VIII(3).) Because the defendants are bound by the terms of the CBA, the Court in its discretion grants prejudgment interest at a rate of 9% per annum on the amounts due from the date of the award to the date judgment is entered in this matter.

### B

The Union also contends that the defendants are responsible for the Union's counsel fees and court expenses incurred in enforcing the arbitration award. The CBA provides that, if either party fails to follow the terms of an arbitration award within two weeks after the award is sent, the other party is entitled to sue and, if successful, to receive from the other party "all expenses for counsel fees and court costs." (CBA at Art. VIII(4).) Stone Park assumed responsibility in the Contract of Sale for all liabilities relating to the Union employees under the CBA, and there is no basis to exclude this specific contractual obligation any more than any other provision of the CBA that concerns the employees. The final arbitration decision was issued on July 21, 2003 and this complaint was filed on August 29, 2003. (Arbitration Award at 17; Compl. at 5.) By their own statements, the defendants have not complied with the terms of the award. (Pl.'s Rule 56.1 St. ¶¶ 25–26; Def.'s Rule 56.1 St. ¶¶ 25–26.) The plaintiff is thus entitled to attorneys' fees and costs in securing the award.

### CONCLUSION

For the reasons explained above, the plaintiff's motion for summary judgment is granted, the arbitration award is confirmed, with interest at an annual rate of 9%, and the plaintiff is awarded attorneys' fees and costs for enforcing the award. The plaintiff is directed to submit a proposed Judgment within five days. The defendants may submit any objections two days thereafter. The plaintiff may submit a motion pursuant to Fed.R.Civ.P. 54(d)(2) after Judgment is entered seeking attorneys' fees and supporting the amounts sought.

SO ORDERED.



SONY MUSIC ENTERTAINMENT
INC., et al., Plaintiffs

v.

DOES 1–40, Defendants.

No. 04 CIV. 473(DC).

United States District Court,
S.D. New York.

July 26, 2004.

**Background:** Record companies brought infringement actions against unidentified defendants who had allegedly downloaded and distributed copyrighted songs from Internet. Defendants moved to quash subpoena, served on non-party Internet service provider (ISP), seeking to obtain defendants' identities.

**Holding:** The District Court, Chin, J., held that First Amendment did not bar ISP's disclosure of defendants' identities.

Motion denied.

**1. Federal Courts ⬤=13**

Motion to quash copyright infringement plaintiffs' subpoena to non-party Internet service provider (ISP), seeking identities of its subscribers, was not rendered moot by ISP's provision of subpoenaed information to plaintiffs; motion had been submitted prior to return date of subpoena and, in any event, court had authority to suppress or order return of information improperly obtained.

**2. Constitutional Law ⬤=90.1(1)**

First Amendment protects anonymous speech. U.S.C.A. Const.Amend. 1.

**3. Constitutional Law ⬤=82(6.1)**

First Amendment's protection extends to Internet. U.S.C.A. Const.Amend. 1.

**4. Constitutional Law ⬤=82(6.1)**

First Amendment does not protect copyright infringement. U.S.C.A. Const. Amend. 1.

**5. Constitutional Law ⬤=82(6.1)**

Parties may not use First Amendment to encroach upon intellectual property rights of others. U.S.C.A. Const.Amend. 1.

**6. Constitutional Law ⬤=90.1(9)**

Use of peer-to-peer (P2P) file copying networks to download, distribute, or make available for distribution copyrighted sound recordings, without permission, is exercise of First Amendment-protected speech, though only to limited degree and subject to other considerations. U.S.C.A. Const.Amend. 1.

**7. Constitutional Law ⬤=90.1(9)**

**Copyrights and Intellectual Property ⬤=84**

First Amendment did not bar non-party Internet service provider's (ISP's) disclosure of subscribers' identities to owners of copyrights in musical recordings allegedly downloaded and distributed by subscribers without permission; owners had made prima facie showing of infringement, discovery request was specific, owners lacked alternative means of obtaining information, information was needed in order for owners to pursue claims, and subscribers were on notice of ISP's reserved right to disclose information if required by law. U.S.C.A. Const.Amend. 1.

**8. Constitutional Law ⬤=90.1(9)**

Factors court considers when weighing party's need to discover identity of Internet service provider's (ISP's) subscriber against subscriber's First Amendment interest in maintaining his or her anonymity include: (1) party's concrete showing of prima facie claim of actionable harm; (2) specificity of discovery request; (3) absence of alternative means to obtain subpoenaed information; (4) central need for subpoenaed information to advance party's claim; and (5) subscriber's expectation of privacy. U.S.C.A. Const.Amend. 1.

**9. Copyrights and Intellectual Property ⬤=51**

Elements of prima facie claim of copyright infringement are: (1) ownership of valid copyright, and (2) copying of constituent elements of work that are original.

**10. Federal Civil Procedure ⬤=1269.1**

Court has discretion to allow discovery to determine basis for personal jurisdiction. Fed.Rules Civ.Proc.Rule 12(b)(2), 28 U.S.C.A.

**11. Federal Civil Procedure ⬤=81, 388**

Remedy for improper joinder is severance. Fed.Rules Civ.Proc.Rule 21, 28 U.S.C.A.

———————

Cowan, Liebowitz & Latman, P.C. by J. Christopher Jensen, Esq., Jason David

Sanders, Esq., New York City, Jenner & Block LLP by Thomas J. Perrelli, Esq., Washington, DC, for Plaintiffs.

Louis P. Pittocco, Esq., Greenwich, CT, for Doe Defendant.

Electronic Frontier Foundation by Wendy Seltzer, Esq., Cindy A. Cohn, Esq., San Francisco, CA, Public Citizen by Paul Alan Levy, Esq., Charlotte Garden, Esq., Washington, DC, American Civil Liberties Union by Christopher A. Hansen, Esq., Aden J. Fine, Esq., New York City, for Amici Curiae.

## OPINION

CHIN, District Judge.

In this case, plaintiffs—seventeen record companies—sued forty unidentified "Doe" defendants for copyright infringement, alleging that defendants illegally downloaded and distributed plaintiffs' copyrighted or exclusively licensed songs from the Internet, using a "peer to peer" file copying network. Plaintiffs served a subpoena on non-party Internet service provider Cablevision Systems Corporation ("Cablevision"), seeking to obtain defendants' identities. Four defendants move to quash the subpoena.

The motions present two First Amendment issues. First, is a person who uses the Internet to download or distribute copyrighted music without permission engaging in the exercise of speech? Second, if so, is such a person's identity protected from disclosure by the First Amendment? I conclude that a person who uses the Internet to download or distribute copy-

righted music without permission is engaging in the exercise of speech, albeit to a limited extent only. I conclude further that such a person's identity is not protected from disclosure by the First Amendment. Accordingly, the motions to quash are denied.

## STATEMENT OF THE CASE

### I. Facts

Plaintiffs own the copyrights and exclusive licenses to the various sound recordings at issue in this case. (Compl.¶ 23). Plaintiffs allege that each of the forty Doe defendants, without plaintiffs' permission, used "Fast Track," an online media distribution system—or "peer to peer" ("P2P") file copying network—to download, distribute to the public, or make available for distribution "hundreds or thousands" of copyrighted sound recordings. (Id. ¶ 25, Exh. A; Whitehead Decl. I ¶ 6; Whitehead Decl. II ¶ 4).[1] In their most popular form, P2P networks are computer systems or processes that enable Internet users to "(1) make files (including audio recordings) stored on a computer available for copying by other users; (2) search for files stored on other users' computers; and (3) transfer exact copies of files from one computer to another via the Internet." (Whitehead Decl. I ¶ 7).

Plaintiffs were able to identify Cablevision as the Internet service provider ("ISP") to which defendants subscribed, using a publicly available database to trace the Internet Protocol ("IP") address for

---

1. "Whitehead Decl. I" refers to the Declaration of Jonathan Whitehead in Support of Plaintiffs' Ex Parte Application to Take Immediate Discovery, dated January 21, 2004. Whitehead is the vice president and counsel for Online Copyright Protection for the Recording Industry Association of America, Inc. (Whitehead Decl. I ¶ 1).

"Whitehead Decl. II" refers to the Second Declaration of Jonathan Whitehead, dated April 21, 2004 and submitted in support of Plaintiffs' Opposition to Jane Doe's Motion to Quash and Response to the Memorandum of Amici Curiae Public Citizen et al.

each defendant. (*Id.* ¶¶ 12, 16). ISPs own or are assigned certain blocks or ranges of IP addresses. (*Id.* ¶ 14 n. 1). An ISP assigns a particular IP address in its block or range to a subscriber when that subscriber goes "online." (*Id.*). An ISP can identify the computer from which the alleged infringement occurred and the name and address of the subscriber controlling the computer when it is provided with a user's IP address and the date and time of the allegedly infringing activity. (*Id.* ¶ 14).

As a condition of providing its Internet service, Cablevision requires its subscribers to agree to its "Terms of Service" under which "[t]ransmission or distribution of any material in violation of any applicable law or regulation is prohibited. This includes, without limitation, material protected by copyright, trademark, trade secret or other intellectual property right used without proper authorization." (Cablevision Mem. 2 (citing http://www.optimumonline.com/index.    jhtml?pageType=aup)). The Terms of Service also state that "Cablevision has the right . . . to disclose any information as necessary to satisfy any law, regulation or other governmental request." (*Id.* (citing http://www.optimumonline.com/index.jhtml; jsessionid=IJGQQMJ2FS4OSCQLASDS-FEQKBMCIMI5G?pageType=terms)).

## II.  *Prior Proceedings*

On January 26, 2004, this Court issued an order granting plaintiffs' ex parte application to serve a subpoena upon non-party Cablevision to obtain the identity of each Doe defendant by requesting the name, address, telephone number, email address, and Media Access Control address for each defendant. In support of their application for expedited discovery, plaintiffs argued, *inter alia*, that good cause existed because ISPs typically retain user activity

logs for only a limited period of time before erasing data. (Pl. Mem. 6; Whitehead Decl. I ¶ 22).

On February 2, 2004, amici curiae Electronic Frontier Foundation, Public Citizen, and the American Civil Liberties Union ("amici") submitted a letter to the Court objecting to plaintiffs' ex parte application for expedited discovery. The objection came after the Court had already issued its January 26, 2004 Order. In their letter, amici argued that the requested discovery violated the First Amendment, the case improperly joined all defendants, and personal jurisdiction was lacking.

On February 3, 2004, the Court ordered that its January 26, 2004 Order remain in effect. The February 3, 2004 Order further provided that, if Cablevision were served with a subpoena from plaintiffs, Cablevision was to give its subscribers notice within five business days, and Cablevision or the Doe defendants could move to quash the subpoena before the subpoena's return date. (2/3/04 Order). Cablevision was instructed to preserve the subpoenaed information in question pending resolution of any timely filed motions to quash. (*Id.*). The Court further ordered that issues raised by amici would be considered by the Court if and when any subscriber, defendant, or Cablevision moved to quash and the parties and non-party witnesses had been given an opportunity to be heard. (*Id.*).

On February 3, 2004, Cablevision received by fax a subpoena issued by plaintiffs' attorneys. (Kiefer Decl. ¶ 2). The subpoena identified forty IP addresses and demanded that Cablevision produce, by February 23, 2004, information identifying the Cablevision subscribers who had used the indicated IP addresses at the times specified in the subpoena. (*Id.*).

Cablevision sent notice to all affected subscribers. (*Id.* ¶ 4). Cablevision's letter stated,

> Unless we hear from you, or your attorney, in writing by February 20, 2004 that you have filed the appropriate papers with the U.S. District Court for the Southern District of New York to have the subpoena set aside, we will disclose your subscriber information to the plaintiffs, as required by the enclosed subpoena.

(2/12/04 Notice Letter from Cablevision to Subscriber; *see also* Kiefer Decl. ¶ 4).

By letter dated February 19, 2004, attorney Kenneth J. Hanko advised the Court that he represented one of the Doe defendants. (2/19/04 Hanko Letter to Court). Hanko stated that his client joined the arguments set forth in the February 2, 2004 letter to the Court from the Electronic Frontier Foundation, Public Citizen, and the American Civil Liberties Union. (*Id.*). Hanko's letter also argued that plaintiffs "have not made a sufficient factual showing to warrant discovery concerning the unnamed defendants." (*Id.*).

On February 20, 2004, Cablevision received from Hanko a letter stating that he represented one of Cablevision's subscribers and that he "would expect that Cablevision will make every effort to quash the subpoena or otherwise limit the scope of the requested discovery so ... as not to infringe on [his] client's privacy rights." (Kiefer Decl. ¶ 5). According to Cablevision attorney Alfred G. Kiefer, Jr., he called Hanko on February 20, 2004 and informed Hanko that because he had not filed a motion to quash the subpoena, Cablevision would have to comply with the subpoena. (*Id.* ¶ 6).

On February 23, 2004, Cablevision complied with plaintiffs' subpoena and provided relevant identifying information about thirty-six defendants to plaintiffs. (*Id.* ¶ 7; *see also* 3/2/04 Plaintiffs' Letter to Court; 3/12/04 Plaintiffs' Letter to Court).[2] According to Kiefer, Cablevision did so because Hanko did not indicate to Cablevision that he had filed or intended to file a motion to quash the subpoena and because Cablevision did not construe Hanko's letter to the Court as a motion to quash. (Kiefer Decl. ¶ 7). According to Hanko, his transmittal of the copy of his February 19, 2004 letter to the Court, by which Hanko's client joined the arguments set forth by amici in their February 2, 2004 letter to the Court, communicated to Cablevision his client's objection to the subpoena. (3/12/04 Letter from Hanko to the Court).

This Court issued an Order on February 27, 2004, in which it ruled that Hanko's February 19, 2004 letter to the Court would be construed as a motion to quash the subpoena. The Court set a briefing schedule, with a March 19, 2004 deadline for motions to quash from other Doe defendants and amici curiae papers.

The Court subsequently received three letter requests to quash the subpoena from or on behalf of other Doe defendants. (Letters from Doe defendants to Court dated 3/12/04, 3/15/04, and 3/18/04). Two Doe defendants also sought extensions of time to submit motions to quash. (Letters from Doe defendants to Court dated 3/16/04 and 3/18/04).

On March 25, 2004, the Court issued an Order extending the deadline for filing and service of motions to quash to April 8, 2004.

---

**2.** According to a March 12, 2004 letter from plaintiffs' counsel to the Court, Cablevision could not identify four of the Doe defendants. (3/12/04 Plaintiffs' Letter to Court).

By letters dated April 7, 2004 and April 30, 2004, defendant Jane Doe ("Jane Doe") stated that she was using her former counsel Kenneth J. Hanko's February 19, 2004 letter to the Court as her formal motion to quash, based on lack of a sufficient factual showing permitting discovery, her First Amendment right to anonymity, and lack of personal jurisdiction. (Letters from Jane Doe, c/o Cindy Cohn, Esq., Electronic Frontier Foundation, to Court, dated 4/7/04 and 4/30/04).

In the meantime, from March 11, 2004 to April 13, 2004, plaintiffs voluntarily dismissed this action as to Does 5, 9, 10, 12, 20, 34, and 40, pursuant to Fed.R.Civ.P. 41(a). Thirty-three of the original forty Doe defendants remain.

## DISCUSSION

### I. *Mootness*

[1] Plaintiffs contend that the motions to quash the subpoena are moot in light of Cablevision's compliance with the subpoena on February 23, 2004. (Pl. Opp. 6–7; *see also* Plaintiffs' Letters to Court dated 3/2/04 and 3/12/04). By the time this Court issued its February 27, 2004 Order setting a March 19, 2004 deadline for additional motions to quash the subpoena and amici curiae papers, Cablevision had already provided the subpoenaed information to plaintiffs.

Amici argue that the motions to quash are not moot because the Court is empowered to compel the suppression or return of evidence improperly obtained. (Am. Cur.Mem.3). Amici contend that the dis-

closure of the Doe defendants' identities violated the Court's February 3, 2004 Order directing Cablevision to preserve subpoenaed information pending resolution of any motions to quash filed prior to the subpoena's return date. (*Id.* at 16). Accordingly, amici seek an order from the Court directing that the Doe defendants' identities not be used for any purpose. (*Id.*).

Plaintiffs' mootness argument is rejected. First, at least one "motion" to quash was timely lodged, as Hanko's letter of February 19, 2004 was the equivalent of a motion to quash, and it was submitted prior to the return date of the subpoena. Second, even though Cablevision has already produced the information, plaintiffs can be ordered to return the information and prohibited from using it. Accordingly, the issues are not moot, and I consider the issues on the merits.

### II. *The Merits*

Pursuant to Fed.R.Civ.P. 45(c)(3)(A)(iii), a subpoena shall be quashed if it "requires disclosure of privileged or other protected matter and no exception or waiver applies."

Jane Doe moves to quash the subpoena based on (1) the subpoena's violation of her First Amendment right to engage in anonymous speech; (2) lack of personal jurisdiction; (3) improper joinder of the Doe defendants; and (4) lack of a sufficient factual showing to permit discovery. Jane Doe and amici argue, accordingly, that the Court should order plaintiffs to return the disclosed information to Cablevision.[3]

---

3. Of the four moving defendants, only Jane Doe states substantive grounds for her motion to quash. Accordingly, I address only the grounds she and amici raise. In her February 19, 2004 letter, Jane Doe joined the arguments set forth in amici's February 2, 2004 letter, which included its arguments that the

First Amendment bars disclosure of the Doe defendants' identities, lack of personal jurisdiction, improper joinder, and lack of a sufficient factual showing permitting discovery. Amici make the same arguments in their Memorandum in Support of Motions to Quash. By letters dated April 7, 2004 and

Plaintiffs contest these arguments and maintain that they have "good cause" for expedited discovery.

### A. The First Amendment

Defendants' motions to quash raise two First Amendment issues: (1) whether a person who uses the Internet to download or distribute copyrighted music without permission is engaging in the exercise of speech; and (2) if so, whether such a person's identity is protected from disclosure by the First Amendment.

#### 1. Applicable Law

#### a. First Amendment Protection for Anonymous Internet Speech

[2]  The Supreme Court has recognized that the First Amendment protects anonymous speech. *Buckley v. American Constitutional Law Found.,* 525 U.S. 182, 200, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999) (invalidating, on First Amendment grounds, state statute requiring initiative petitioners to wear identification badges). As the Court has held, "[a]nonymity is a shield from the tyranny of the majority." *McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 357, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995). In *McIntyre,* the Court overturned an Ohio law that prohibited the dissemination of campaign literature that did not list the name and address of the person issuing the literature, holding that "[u]nder our Constitution, anonymous pamphleteering is not a pernicious, fraudulent practice, but an honorable tradition of advocacy and of dissent." *Id.; see also Talley v. California,* 362 U.S. 60, 65, 80 S.Ct. 536, 4 L.Ed.2d 559 (1960) (invalidating California statute prohibiting distribu-

April 30, 2004, Jane Doe reiterated her objections to disclosure of her identity based on the First Amendment, lack of a sufficient factual showing permitting discovery, and lack of

tion of handbills without name and address of preparer).

[3]  It is well-settled that the First Amendment's protection extends to the Internet. *Reno v. ACLU,* 521 U.S. 844, 870, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997); *In re Verizon Internet Servs., Inc.,* 257 F.Supp.2d 244, 259 (D.D.C.2003), *rev'd on other grounds, Recording Indus. Ass'n of America, Inc. v. Verizon Internet Servs., Inc.,* 351 F.3d 1229 (D.C.Cir.2003); *Columbia Ins. Co. v. Seescandy.Com,* 185 F.R.D. 573, 578 (N.D.Cal.1999); *ACLU v. Johnson,* 4 F.Supp.2d 1029, 1033 (D.N.M.1998), *aff'd,* 194 F.3d 1149 (10th Cir.1999). Courts have recognized the Internet as a valuable forum for robust exchange and debate. *See Reno v. ACLU,* 521 U.S. at 870, 117 S.Ct. 2329 ("Through the use of chat rooms, any person with a phone line can become a town crier with a voice that resonates farther than it could from any soapbox."); *Doe v. 2TheMart.Com,* 140 F.Supp.2d 1088, 1092 (W.D.Wash. 2001); *Seescandy.Com,* 185 F.R.D. at 578. The Internet is a particularly effective forum for the dissemination of anonymous speech. *See, e.g., 2TheMart.Com,* 140 F.Supp.2d at 1092, 1097 ("Internet anonymity facilitates the rich, diverse, and far ranging exchange of ideas ... [;] the constitutional rights of Internet users, including the First Amendment right to speak anonymously, must be carefully safeguarded."); *United States v. Perez,* 247 F.Supp.2d 459, 461 (S.D.N.Y.2003) (noting the Internet's "vast and largely anonymous distribution and communications network").

[4, 5]  Anonymous speech, like speech from identifiable sources, does not have absolute protection. The First Amend-

personal jurisdiction. (Letters from Jane Doe, c/o Cindy Cohn, Esq., Electronic Frontier Foundation, to Court, dated 4/7/04 and 4/30/04).

ment, for example, does not protect copyright infringement, and the Supreme Court, accordingly, has rejected First Amendment challenges to copyright infringement actions. *See, e.g., Harper & Row Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 555–56, 569, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985); *Universal City Studios, Inc. v. Reimerdes,* 82 F.Supp.2d 211, 220 (S.D.N.Y.2000) (the "Supreme Court … has made it unmistakably clear that the First Amendment does not shield copyright infringement"). Parties may not use the First Amendment to encroach upon the intellectual property rights of others. *See In re Capital Cities/ABC, Inc.,* 918 F.2d 140, 143 (11th Cir.1990).

**b.  *First Amendment Implications of Civil Subpoena Power***

Against the backdrop of First Amendment protection for anonymous speech, courts have held that civil subpoenas seeking information regarding anonymous individuals raise First Amendment concerns. For example, in *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 462, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), the Supreme Court held that a discovery order requiring the NAACP to disclose its membership list interfered with the First Amendment's freedom of assembly. Similarly, in *NLRB v. Midland Daily News,* 151 F.3d 472, 475 (6th Cir.1998), the Sixth Circuit declined on First Amendment grounds to enforce a subpoena duces tecum issued by the National Labor Relations Board seeking to require a newspaper publisher to disclose the identity of an anonymous advertiser. *See also Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League,* 89 F.R.D. 489, 494–95 (C.D.Cal.1981) (granting motion to quash civil subpoena seeking

disclosure of confidential journalistic sources); *but see Lee v. U.S. Dep't of Justice,* 287 F.Supp.2d 15, 24–25 (D.D.C. 2003) (denying motion to quash subpoena duces tecum seeking journalists' confidential news sources in light of plaintiff's need to obtain information to pursue Privacy Act action against government).

Courts have addressed, on a number of recent occasions, motions to quash subpoenas seeking identifying subscriber information from ISPs. Some courts have required disclosure. For example, in a case closely resembling this one, the district court in *Verizon,* 257 F.Supp.2d at 267–68, 275, *rev'd on other grounds, Recording Indus. Ass'n of America, Inc. v. Verizon Internet Servs., Inc.,* 351 F.3d 1229 (D.C.Cir.2003), denied an ISP's motion to quash a subpoena served pursuant to the Digital Millennium Copyright Act ("DMCA") seeking subscriber information about P2P users who had allegedly engaged in copyright infringement.[4] Similarly, in *In re Subpoena Duces Tecum to America Online, Inc.,* No. 40570, 2000 WL 1210372, at *1 (Va. Cir. Ct. Jan. 31, 2000), *rev'd on other grounds, America Online, Inc. v. Anonymous Publicly Traded Co.,* 261 Va. 350, 542 S.E.2d 377 (2001), the court denied a motion to quash a subpoena seeking the identity of certain Doe defendants who had allegedly made defamatory statements and disclosed confidential insider information online. Other courts, in different circumstances, have quashed subpoenas seeking information identifying ISP subscribers. *See, e.g., 2The-Mart.Com,* 140 F.Supp.2d at 1090, 1097–98 (granting motion to quash subpoena seeking identities of anonymous non-party ISP subscribers in shareholder derivative suit); *Anderson v. Hale,* No. 00 Civ.2021, 2001

---

4.  The District of Columbia Circuit reversed, holding that § 512(h) of the DMCA authorized service of a subpoena only on "an ISP engaged in storing on its servers material that is infringing or the subject of infringing activity." 351 F.3d at 1233.

WL 503045, at *9 (N.D.Ill. May 10, 2001)
(granting motion to quash subpoena seek-
ing identifying information from ISP about
subscribers affiliated with organization);
*Dendrite Int'l, Inc. v. Doe*, 342 N.J.Super.
134, 775 A.2d 756, 760, 772 (2001) (denying
motion for expedited discovery to obtain
identity of ISP subscriber due to failure to
establish prima facie defamation claim).

### 2. *Application*
#### a. *Is Defendants' Alleged Conduct "Speech?"*

[6] As a threshold matter, I address
whether the use of P2P file copying net-
works to download, distribute, or make
available for distribution copyrighted
sound recordings, without permission, is
an exercise of speech. I conclude that this
conduct qualifies as speech, but only to a
degree.

In contrast to many cases involving
First Amendment rights on the Internet, a
person who engages in P2P file sharing is
not engaging in true expression. *See, e.g.,*
*Reno v. ACLU,* 521 U.S. at 870, 117 S.Ct.
2329 (participation in Internet chat rooms);
*America Online,* 2000 WL 1210372, at *1
(same); *2TheMart.Com,* 140 F.Supp.2d at
1092 (Internet bulletin board); *Dendrite,*
775 A.2d at 759–60 (same); *La Societe
Metro Cash & Carry France v. Time War-
ner Cable,* No. CV030197400S, 2003 WL
22962857, at *1 (Conn.Super. Dec. 2, 2003)
(email communications through Internet).
Such an individual is not seeking to com-
municate a thought or convey an idea.
Instead, the individual's real purpose is to
obtain music for free.

Arguably, however, a file sharer is mak-
ing a statement by downloading and mak-
ing available to others copyrighted music
without charge and without license to do

so. Alternatively, the file sharer may be
expressing himself or herself through the
music selected and made available to oth-
ers. Although this is not "political expres-
sion" entitled to the "broadest protection"
of the First Amendment, *McIntyre,* 514
U.S. at 346, 115 S.Ct. 1511 (quoting *Buck-
ley v. Valeo,* 424 U.S. 1, 14, 96 S.Ct. 612, 46
L.Ed.2d 659 (1976)),[5] the file sharer's
speech is still entitled to "some level of
First Amendment protection." *Verizon,*
257 F.Supp.2d at 260, *rev'd on other
grounds, Recording Indus. Ass'n of Amer-
ica, Inc. v. Verizon Internet Services, Inc.,*
351 F.3d 1229 (D.C.Cir.2003).

I conclude, accordingly, that the use of
P2P file copying networks to download,
distribute, or make sound recordings avail-
able qualifies as speech entitled to First
Amendment protection. That protection,
however, is limited, and is subject to other
considerations.

#### b. *Are Defendants' Identities Protected from Disclosure by the First Amendment?*

[7] I consider next whether the Doe
defendants' identities are protected from
disclosure by the First Amendment. For
the reasons set forth below, I conclude
that the First Amendment does not bar
disclosure of the Doe defendants' identi-
ties.

[8] Cases evaluating subpoenas seek-
ing identifying information from ISPs re-
garding subscribers who are parties to liti-
gation have considered a variety of factors
to weigh the need for disclosure against
First Amendment interests. These factors
include: (1) a concrete showing of a prima
facie claim of actionable harm, *see Sees-
candy.Com,* 185 F.R.D. at 577, 579–81

---

5. *See McIntyre,* 514 U.S. at 347, 115 S.Ct.
1511 ("When a law burdens core political
speech, we apply 'exacting scrutiny,' and we

uphold the restriction only if it is narrowly
tailored to serve an overriding state inter-
est.").

(permitting plaintiff to request discovery, based on particular factors, to determine identities of defendants known only by Internet pseudonyms and domain name registration identities); *America Online*, 2000 WL 1210372, at *8, *rev'd on other grounds, America Online, Inc. v. Anonymous Publicly Traded Co.*, 261 Va. 350, 542 S.E.2d 377 (2001); *Dendrite*, 775 A.2d at 760; (2) specificity of the discovery request, *Seescandy.Com*, 185 F.R.D. at 578, 580; *Dendrite*, 775 A.2d at 760; (3) the absence of alternative means to obtain the subpoenaed information, *see Seescandy.Com*, 185 F.R.D. at 579; (4) a central need for the subpoenaed information to advance the claim, *America Online*, 2000 WL 1210372, at *8; *Dendrite*, 775 A.2d at 760–61; and (5) the party's expectation of privacy, *Verizon*, 257 F.Supp.2d at 260–61, 267–68, *rev'd on other grounds, Recording Indus. Ass'n of America, Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229 (D.C.Cir.2003). As set forth below, each of these factors supports disclosure of defendants' identities.

### i. *Prima Facie Claim of Copyright Infringement*

[9]  Plaintiffs have made a concrete showing of a prima facie claim of copyright infringement. A prima facie claim of copyright infringement consists of two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Arden v. Columbia Pictures Indus., Inc.*, 908 F.Supp. 1248, 1257 (S.D.N.Y.1995) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Service Co., Inc.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)).

Plaintiffs have alleged ownership of the copyrights or exclusive rights of copyrighted sound recordings at issue in this case sufficiently to satisfy the first element of copyright infringement. (Compl.¶¶ 23, 24).[6]  Plaintiffs have attached to the complaint a partial list of the sound recordings the rights to which defendants have allegedly infringed. (*Id.*, Exh. A).  Each of the copyrighted recordings on the list is the subject of a valid Certificate of Copyright Registration issued by the Register of Copyrights to one of the record company plaintiffs. (*Id.* ¶ 23).  Plaintiffs also allege that among the exclusive rights granted to each plaintiff under the Copyright Act are the exclusive rights to reproduce and distribute to the public the copyrighted recordings. (*Id.* ¶ 24).  Defendants have failed to refute in any way plaintiffs' allegations of ownership.  Plaintiffs have also adequately pled the Doe defendants' infringement of plaintiffs' licenses and copyrights, thus satisfying the second element in a copyright infringement claim.  Plaintiffs allege that each defendant, without plaintiffs' consent, "used, and continues to use an online media distribution system to download, distribute to the public, and/or make available for distribution to others" certain of the copyrighted recordings in Exhibit A to the complaint. (*Id.* ¶ 25).

Plaintiffs have submitted supporting evidence listing the copyrighted songs downloaded or distributed by defendants using P2P systems. (*Id.*, Exh. A; Whitehead Decl. I, Exhs. 1–3).  The lists also specify the date and time at which defendants' allegedly infringing activity occurred and the IP address assigned to each defendant at the time. (Compl., Exh. A).

Moreover, the use of P2P systems to download and distribute copyrighted music has been held to constitute copyright infringement. *See A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013–14 (9th

---

6.  Exclusive licensees can sue for copyright infringement.  *See Random House, Inc. v. Ro-*  *setta Books LLC*, 283 F.3d 490, 491 (2d Cir. 2002).

Cir.2001) (holding that downloading and distribution of copyrighted music via P2P network Napster constituted copyright infringement); *In re Aimster Copyright Litigation*, 334 F.3d 643, 653 (7th Cir.2003) (affirming grant of preliminary injunction against P2P network Aimster in absence of evidence that system was used to transfer non-copyrighted files), *cert. denied, Deep v. Recording Indus. Ass'n of America, Inc.,* —— U.S. ——, 124 S.Ct. 1069, 157 L.Ed.2d 893 (2004). Accordingly, plaintiffs have sufficiently pled copyright infringement to establish a prima facie claim.

### ii. *Specificity of the Discovery Request*

Plaintiffs' discovery request is also sufficiently specific to establish a reasonable likelihood that the discovery request would lead to identifying information that would make possible service upon particular defendants who could be sued in federal court. *See Seescandy.Com*, 185 F.R.D. at 578, 580; *Dendrite*, 775 A.2d at 760. Plaintiffs seek identifying information about particular Cablevision subscribers, based on the specific times and dates when they downloaded specific copyrighted and licensed songs. (Compl., Exh. A.; Whitehead Decl. I, Exhs. 1–3). Such information will enable plaintiffs to serve process on defendants.

### iii. *Absence of Alternative Means to Obtain Subpoenaed Information*

Plaintiffs have also established that they lack other means to obtain the subpoenaed information by specifying in their ex parte application for expedited discovery and papers in opposition to Jane Doe's motion to quash the steps they have taken to locate the Doe defendants. *See Seescandy.Com*, 185 F.R.D. at 579. These include using a publicly available database to trace the IP address for each defendant, based on the times of infringement. (Pl. Mem. 1–2; Pl. Opp. 2–4; Whitehead Decl. I ¶¶ 12, 16).

### iv. *Central Need for Subpoenaed Information*

Plaintiff have also demonstrated that the subpoenaed information is centrally needed for plaintiffs to advance their copyright infringement claims. *See America Online*, 2000 WL 1210372, at *8; *Dendrite*, 775 A.2d at 760–61. Ascertaining the identities and residences of the Doe defendants is critical to plaintiffs' ability to pursue litigation, for without this information, plaintiffs will be unable to serve process.

### v. *Defendants' Expectation of Privacy*

Plaintiffs are also entitled to discovery in light of defendants' minimal expectation of privacy. *See Verizon*, 257 F.Supp.2d at 260–61, 267–68, *rev'd on other grounds, Recording Indus. Ass'n of America, Inc. v. Verizon Internet Services, Inc.*, 351 F.3d 1229 (D.C.Cir.2003). Cablevision's Terms of Service, to which its subscribers—including the Doe defendants—must commit, specifically prohibit the "[t]ransmission or distribution of any material in violation of any applicable law or regulation.... This includes, without limitation, material protected by copyright, trademark, trade secret or other intellectual property right used without proper authorization." (Cablevision Mem. 2 (citing http:// www.optimumonline.com/index.jhtml?pageType=aup)). Moreover, the Terms of Service state that "Cablevision has the right ... to disclose any information as necessary to satisfy any law, regulation or other governmental request." (Cablevision Mem. 2 (citing http:// www.optimumonline.com/index.jhtml; jsessionid=IJGQQMJ2FS4OSCQLASDS-FEQKBMCIMI5G?pageType=terms)). Accordingly, defendants have little expectation of privacy in downloading and distributing copyrighted songs without permission. *See Verizon*, 257 F.Supp.2d at 260–61, 267–68, *rev'd on other grounds, Recording Indus. Ass'n of America, Inc.*

*v. Verizon Internet Servs., Inc.*, 351 F.3d 1229 (D.C.Cir.2003).[7]

In sum, defendants' First Amendment right to remain anonymous must give way to plaintiffs' right to use the judicial process to pursue what appear to be meritorious copyright infringement claims.

### B.  *Personal Jurisdiction*

Jane Doe and amici ask the Court to quash the subpoena based on the absence of personal jurisdiction.[8]  This argument is rejected as premature.

[10]  First, this Court has the discretion to allow discovery to determine the basis for personal jurisdiction.  *See Volkart Bros., Inc. v. M/V Palm Trader*, 130 F.R.D. 285, 290 (S.D.N.Y.1990) (citing cases).

Second, without the identifying information sought by plaintiffs in the Cablevision subpoena, it would be difficult to assess properly the existence of personal jurisdiction over the Doe defendants.  This analysis requires an evaluation of the contacts between the various defendants and the forum state.  *See LiButti v. United States*, 178 F.3d 114, 122 (2d Cir.1999) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)); *Retail Software Servs., Inc. v. Lashlee*, 854 F.2d 18, 23 (2d Cir.1988) (same).  A holding at this stage that personal jurisdiction is lacking would be premature.

Amici argue, however, that personal jurisdiction is lacking because research techniques available to plaintiffs prior to this litigation show the likelihood that the majority of the Doe defendants are not New York residents.  (Am.Cur.Mem.11).  A supporting declaration by Seth Schoen, staff technologist with amicus curiae Electronic Frontier Foundation, explains the process by which defendants' IP addresses can be matched up with specific geographic designations, using a publicly available database operated by the American Registry for Internet Numbers.  (*See* Schoen Decl.).  These geographic designations indicate the "likely" locations of the residences or other venues where defendants used their Internet-connected computers. (*Id.* ¶¶ 5–9).  Amici maintain that as many as thirty-six of the forty Doe defendants are "likely" to be found outside of New York. (*Id.* ¶ 16).

Plaintiffs, however, dispute the accuracy of the methods described in the Schoen Declaration.  (Pl. Opp. 18 n. 11; Whitehead Decl. II ¶ 9).  According to plaintiffs, the geographical designations fall "far short" of 100 percent accuracy and are "often extremely inaccurate."  (Whitehead Decl. II ¶ 9).

Assuming personal jurisdiction were proper to consider at this juncture, the techniques suggested by amici, at best, suggest the mere "likelihood" that a number of defendants are located outside of New York.  This, however, does not resolve

---

7.  I note that the court in *Verizon* also based its decision to allow disclosure of ISP subscriber identities on the nature of P2P file sharing:  "[I]f an individual subscriber opens his computer to permit others, through peer-to-peer file-sharing, to download materials from that computer, it is hard to understand just what privacy expectation he or she has after essentially opening the computer to the world."  257 F.Supp.2d at 267.

8.  Plaintiffs contend that no defendant has argued lack of personal jurisdiction.  (Pl. Opp.14).  In fact, the February 19, 2004 letter to the Court from attorney Kenneth J. Hanko states that Jane Doe joined the arguments set forth in amici's February 2, 2004 letter to the Court, including an objection to the subpoena based on lack of personal jurisdiction.  Moreover, by letter dated April 30, 2004, Jane Doe explicitly contested personal jurisdiction.

whether personal jurisdiction would be proper.

Accordingly, I decline to rule on personal jurisdiction at this time and deny Jane Doe's motion to quash based on lack of personal jurisdiction.

C. *Joinder*

[11] Jane Doe and amici further urge the Court to quash the subpoena based on improper joinder. Although they raise a fair issue as to whether all these claims against forty apparently unrelated individuals should be joined in one lawsuit, discussion of joinder is not germane to the motions to quash before the Court, as the remedy for improper joinder is severance, *see* Fed.R.Civ.P. 21, and not the quashing of the subpoena at issue here. Accordingly, as consideration of joinder is premature, I deny Jane Doe's motion to quash based on improper joinder.

D. *Factual Showing for Expedited Discovery*

Jane Doe and amici also argue that plaintiffs have not made a "sufficient factual showing" to justify disclosure of defendants' personal information. (2/19/04 Letter from Hanko to Court; 4/7/04 Letter from Jane Doe to Court; Am. Cur. Mem. 1). Plaintiffs argue, however, that "good cause" justified the expedited discovery permitted by the Court upon plaintiffs' ex parte application. (Pl.Opp.7–10).

Parties are essentially urging the Court to revisit its January 26, 2004 Order, by which I permitted plaintiffs to serve immediate discovery. I decline to do so and confine my inquiry, as set forth above, to the motions to quash the subpoena.

*CONCLUSION*

For the reasons set forth above, defendants' motions to quash the subpoena are denied and the arguments raised by amici are rejected. Amici's request that plaintiffs be ordered to return the subpoenaed information to Cablevision and to refrain from using it is denied. Plaintiffs may file and serve an amended complaint by August 16, 2004.

SO ORDERED.



**AUTOMOBILE CLUB OF NEW YORK, INC. Plaintiff,**

v.

**Gretchen DYKSTRA, as Commissioner of the Department of Consumer Affairs of the City of New York and the City of New York, Defendants.**

No. 04 Civ. 02576(RO).

United States District Court, S.D. New York.

July 28, 2004.

**Background:** Not-for-profit corporation providing 24 hour roadside assistance and towing of privately-owned vehicles in New York City area brought action challenging policy of city's Department of Consumer Affairs (DCA) that permitted seizure of any tow truck in city licensed in other counties. Plaintiff moved for preliminary injunction.

**Holding:** The District Court, Owen, J., held that DCA would be preliminarily enjoined from seizing or otherwise sanctioning legitimate towing vehicles that were owned and operated by legitimate tow companies outside of City which were picking up or dropping off vehicle within City

# TAB 13

Westlaw.

Slip Copy
Slip Copy, 2006 WL 1343597 (N.D.Cal.), 2006 Copr.L.Dec. P 29,149, 64 Fed.R.Serv.3d 305
(Cite as: 2006 WL 1343597 (N.D.Cal.))

C
UMG Recordings, Inc. v. Does 1-4
N.D.Cal.,2006.

United States District Court,N.D. California.
UMG RECORDINGS, INC., et al., Plaintiffs,
v.
DOES 1-4, Defendants.
No. 06-0652 SBA (EMC).

filed Jan. 31, 2006.
March 6, 2006.
terminated April 19, 2006.
last filing April 19, 2006.

Andrew L.Y. Chang, Shook Hardy & Bacon L.L.P., San Francisco, CA, Lead Attorney, Attorney to Be Noticed, for Arista Records LLC, (Plaintiff).
Leemore L. Libesman, Holme Roberts & Owen LLP, Los Angeles, CA, Lead Attorney, Attorney to Be Noticed, for Arista Records LLC, (Plaintiff).
Sheila M. Salomon, Shook Hardy & Bacon L.L.P., San Francisco, CA, Lead Attorney, Attorney to Be Noticed, for Arista Records LLC, (Plaintiff).

ORDER GRANTING PLAINTIFFS' MOTION FOR ADMINISTRATIVE RELIEF PURSUANT TO LOCAL RULE 7-11(a) FOR LEAVE TO TAKE IMMEDIATE DISCOVERY

EDWARD M. CHEN, Magistrate J.

(Docket No. 5)

*1 Having reviewed the Plaintiffs' brief and accompanying submissions, and good cause appearing therefor, the Court orders as follows: Plaintiffs' Motion for Administrative Relief Pursuant to Local Rule 7-11(a) for Leave to Take Immediate Discovery is GRANTED.

I. *FACTUAL BACKGROUND*

Plaintiffs have sued Doe Defendants for copyright infringement. Plaintiffs allege that Doe Defendants, without authorization, used a peer-to-peer online media distribution system to download Plaintiffs' copyrighted works, distribute copyrighted works to the public, and/or make copyrighted works available for distribution to others. Plaintiffs do not know the names of the Defendants but have identified each Defendant by a unique Internet Protocol ("IP") address assigned to that Defendant on the date and at the time of the Defendant's infringing activity. Here, the Internet service provider is Covad Communications Co. ("Covad"). Plaintiffs seek leave of the Court to serve immediate discovery on Covad to identify each Defendant. Plaintiffs intend to serve a Federal Rule of Civil Procedure ("Rule") 45 subpoena on Covad seeking each Defendant's true name, address, telephone number, e-mail address, and Media Access Control ("MAC") addresses.

II. *DISCUSSION*

This Court considers this motion in light of the good-cause standard for expedited discovery, First Amendment privacy concerns, and the Cable Communications Policy Act, 47 U.S.C. § 551.

A. *Good Cause*

Expedited discovery under Rule 45 is appropriate when good cause for the discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party. *Semitool, Inc. v. Tokyo Electron America, Inc.,* 208 F.R.D. 273, 276 (N.D.Cal.2002). In *Semitool,* plaintiffs alleged patent infringement and sought expedited discovery to determine if some of its other patents may have been infringed as well. *Id.* at 274.Although the plaintiff would not have been irreparably harmed had it not received expedited discovery, it contended the expedited discovery would ultimately conserve party and court resources and expedite the litigation. *Id.* at 276.Further, the defendants conceded

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                          Page 2
Slip Copy, 2006 WL 1343597 (N.D.Cal.), 2006 Copr.L.Dec. P 29,149, 64 Fed.R.Serv.3d 305
(Cite as: 2006 WL 1343597 (N.D.Cal.))

that the requested information was relevant and would have been produced in the normal course of discovery. *Id.* This Court granted the request. *Id.* at 277.

Here, good cause for expedited discovery outweighs any prejudice to Doe Defendants, for several reasons. First, Plaintiffs have no other way to obtain this most basic information, which is necessary to advance the lawsuit by enabling Plaintiffs to effect service of process. Postponing disclosure of information until the normal course of discovery is not an option in the instant case because, without disclosure of Defendants' names and contact information, the litigation cannot proceed to that stage. *Id.* at 276.Second, expedited discovery is appropriate because ISPs typically retain user activity logs for only a limited period, ranging from as short as a few days to a few months, before erasing data. Whitehead Decl., ¶ 22. If the information is not disclosed before it is destroyed, Plaintiffs will forever lose their opportunity to pursue infringement claims against the people associated with these IP addresses. Third, copyright infringement claims necessarily involve irreparable harm to Plaintiffs, as a copyright holder is presumed to suffer irreparable harm as a matter of law when his right to the exclusive use of copyrighted material is invaded. *Health Ins. Ass'n. of Am. v. Novelli,* 211 F.Supp.2d 23, 28 (D.D.C.2002). Therefore, good cause exists here.

B. *First Amendment*

*2 A person who uses the Internet to download or distribute copyrighted music without permission is engaging in the exercise of speech, but only to a limited extent, and the First Amendment does not protect the person's identity from disclosure. *Sony Music Entertainment, Inc. v. Does 1-40,* 326 F.Supp.2d 556, 558 (S.D.N.Y.2004). In *Sony,* the court granted the plaintiffs' ex parte application to serve a subpoena upon a non-party cable service to obtain the identities of Doe defendants suspected of downloading or distributing copyrighted sound re-

cordings without permission. *Id.* at 558-59.The cable company sent notice to all affected subscribers. *Id.* at 560.An attorney representing one of the Doe defendants sent a letter that the court construed as a motion to quash the subpoena based on, among other grounds, the First Amendment. *Id.* at 560-61.

As a preliminary matter, the court noted that the Supreme Court has held that the First Amendment does not protect copyright infringement. *Id.* at 563 (citing *Harper & Row Publishers, Inc. v. Nation Enters,* 471 U.S. 539, 555-56 (1985)). Proceeding to the merits of the First Amendment challenge, the court reasoned that an individual who downloads or distributes sound recordings is not seeking to convey a thought or idea but rather to obtain music for free. *Id.* at 564.Such an individual, however, may be making a statement by downloading or distributing sound recordings, as in expressing himself or herself through the music selected and made available to others. *Id.* at 564.Therefore, downloading and distributing sound recordings qualifies as speech, but only to a limited extent. *Id.* Next, the court applied five factors in determining whether the First Amendment protected the defendants' identities from disclosure. *Id.* Those factors were: (1) a concrete showing of a prima facie claim of actionable harm; (2) the specificity of the discovery request; (3) the absence of alternative means to obtain the subpoenaed information; (4) a central need for the subpoenaed information to advance the claim; and (5) the Doe defendants' expectation of privacy. *Id.* at 565-65.

The court applied the factors as follows: (1) plaintiffs had made a prima facie showing of copyright infringement, whose two elements are ownership of a valid patent and copying the original work without permission; (2) the discovery request was "sufficiently specific" to establish a reasonable likelihood that it would lead to identifying information that would make possible service upon the defendants; (3) the plaintiffs lacked other means to obtain the subpoenaed information, as a search of a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 1343597 (N.D.Cal.), 2006 Copr.L.Dec. P 29,149, 64 Fed.R.Serv.3d 305
(Cite as: 2006 WL 1343597 (N.D.Cal.))

publicly available database of IP addresses was insufficient; (4) ascertaining the identities of the defendants was critical to plaintiffs' ability to pursue the litigation, for without the information plaintiffs would be unable to serve process; and (5) defendants had little expectation of privacy because the cable company's terms of service stated that the company had the right to disclose any information as necessary "to satisfy any law, regulation, or other governmental request," not to mention that the defendants diminished any expectation of privacy they may have had by opening their computers to others through peer-to-peer file sharing. *Id.* at 565-67.The court concluded that all five factors weighed in the plaintiffs' favor and that, therefore, the First Amendment did not protect the disclosure of the defendants' identities. *Id.* at 567.

*3 Similarly here, although Doe Defendants are engaged in First Amendment speech to a limited extent, the five factors weigh in favor of compelling disclosure of identifying information. (1) Plaintiffs have made a prima facie showing of copyright infringement. Whitehead Decl., ¶ 22., Exh. 1.(2) Because the discovery request seeks only the names and contact information of the people associated with certain IP addresses at certain times, it is "sufficiently specific" to establish a reasonable likelihood that it would lead to identifying information that would make possible service upon the defendants, without revealing more than is necessary. (3) Plaintiffs lack other means to obtain the subpoenaed information, as a search of a publicly available database of IP addresses revealed only the company that administered the relevant IP addresses. (4) Ascertaining the identities of the defendants is critical to Plaintiffs' ability to pursue the litigation, for without the information Plaintiffs would be unable to serve process. (5) Although their user agreements with Covad are not in the record, Defendants had little expectation of privacy because they opened their computers to others through peer-to-peer file sharing. Therefore, the First Amendment does not protect against disclosure of Defendants' names and contact information.

## C. *Cable Communications Policy Act*

The Cable Communications Policy Act ("the Act") generally protects against the disclosure of cable service subscribers' personally identifiable information. 47 U.S.C. § 551(c). The names and addresses of such subscribers may be disclosed, however, if the cable operator has provided the subscriber the opportunity to prohibit or limit such disclosure and the disclosure does not reveal the "(I) extent of any viewing or other use by the subscriber of a cable service or other service provided by the cable operator, or (II) the nature of any transaction made by the subscriber over the cable system of the cable operator ..."§ 551(c)(2)(C). In invoking the Act, Plaintiffs have questioned whether it even applies to cable Internet providers.

The Court finds it unnecessary to decide this question. Regardless of whether the Act applies, Covad is ordered to give its subscribers a copy of the subpoena, before releasing any personally identifiable information, within five (5) days of its receipt of the subpoena. If this Act does apply, then this notice is required by section 551(c)(2)(C)(i). Even if the Act does not apply, the Court finds that notice is required in the interest of fairness and pursuant to Rule 45(c)(3)(A)(iii) and (iv), which provide that a subpoena may be quashed or modified if it requires disclosure of privileged or "other protected matter," or if it subjects a person to undue burden. Given the privacy and potential First Amendment interests that inhere in the records sought, this Court has the authority under the Federal Rules to condition the subpoena on consumer notice and an opportunity to be heard.

## III. *CONCLUSION*

*4 Because there is good cause for the disclosure of Doe Defendants' names and contact information, and because the First Amendment does not prohibit such disclosure, Plaintiffs' Motion for Administrative Relief Pursuant to Local Rule 7-11(a) for Leave to Take Immediate Discovery is GRANTED.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                 Page 4
Slip Copy, 2006 WL 1343597 (N.D.Cal.), 2006 Copr.L.Dec. P 29,149, 64 Fed.R.Serv.3d 305
(Cite as: 2006 WL 1343597 (N.D.Cal.))

Plaintiffs are hereby ordered to serve a Rule 45 subpoena upon Covad. Covad, in turn, shall serve a copy of the subpoena and a copy of this order upon its relevant subscribers within five (5) days of Covad's receipt of the subpoena. The subscribers shall then have 15 days from the date of service upon them to file any objections with this Court. If that 15-day period elapses without any subscriber filing an objection or a motion to quash, Covad shall have ten (10) days after said lapse to produce each subscriber's name, address, telephone number, e-mail address, and Media Access Control ("MAC") addresses to Plaintiffs pursuant to the subpoena.

This order disposes of Docket No. 5.

IT IS SO ORDERED.

N.D.Cal.,2006.
UMG Recordings, Inc. v. Does 1-4
Slip Copy, 2006 WL 1343597 (N.D.Cal.), 2006 Copr.L.Dec. P 29,149, 64 Fed.R.Serv.3d 305

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 14

Westlaw.

Slip Copy
Slip Copy, 2007 WL 4218983 (M.D.Fla.)
(Cite as: 2007 WL 4218983 (M.D.Fla.))

C

Warner Bros. Records, Inc. v. Does 1-14
M.D.Fla.,2007.
Only the Westlaw citation is currently available.
United States District Court, M.D. Florida,
Tampa Division.
WARNER BROS. RECORDS, INC., et al.,
Plaintiffs,
v.
DOES 1-14, Defendants.
No. 8:07-CV-625-T-24TGW.

Nov. 29, 2007.

Chaila Restall, Akerman Senterfitt, Tampa, FL,
Katheryn Jarvis Coggon, Holme Roberts & Owen
LLP, Denver, CO, for Plaintiffs.
Michael Alex Wasylik, Ricardo & Wasylik, PL,
Dade City, FL, for Defendants.

*ORDER*

THOMAS G. WILSON, United States Magistrate
Judge.
*1 THIS CAUSE came on to be heard upon the
Motion by Defendants John Doe # 1 and John Doe
# 7 to Vacate the Order Authorizing *Ex Parte* Discovery, to Quash the *Ex Parte* Subpoena, and for A
Temporary Stay of the *Ex Parte* Subpoena (Doc.
13), and the response thereto (Doc. 16).

In this case an *ex parte* subpoena issued to the University of South Florida ("USF") was authorized by
this court to provide the names, addresses, telephone numbers, e-mail addresses, and Media Access Control ("MAC") addresses of certain users of
USF's computer network who matched IP address
information that had been obtained. Defendants
Does 1 and 7, represented by counsel, have moved
to quash the subpoena. That request will be denied.

The subpoena was issued pursuant to Rule 45,
F.R.Civ.P. Since the subpoena commanded production of information, prior notice was required to be
given in the manner prescribed by Rule 5(b),

F.R.Civ.P. *See* Rule 45(b)(1), F.R.Civ.P. Rule 5(b),
in turn, provides that service may be accomplished
by leaving a copy with the clerk of the court, if the
person served has no known address. Rule
5(b)(2)(C), F.R.Civ.P. The plaintiffs allege that
such service has been accomplished, and there was
no argument to the contrary. In addition, a copy of
the subpoena was served upon counsel for the defendants. Accordingly, the defendants' challenge to
the service of the subpoena is without merit.

The defendants contend that good cause is required
for the issuance of the subpoena. However, neither
party was able to point to any provision in the rules
establishing a good-cause requirement for the issuance of the subpoena. In any event, if there is a
good-cause requirement, it has been shown here,
because the plaintiffs have demonstrated that they
need the information in an attempt to identify individuals who have allegedly been involved in the
misappropriation of hundreds of copyrighted sound
recordings.

The plaintiffs think that the IP addresses that they
have obtained would lead to the identity of the Doe
defendants through the issuance of the subpoena.
Counsel for the defendants obtained expert affidavits which point out that this may not be the case.
Nevertheless, the plaintiffs have shown good cause
to permit them to attempt to locate the identities of
the Does through the subpoenaed information. The
plaintiffs should not be denied the opportunity to
identify the defendants simply because their efforts
may prove futile.

The defendants argue that discovery should not
have been conducted before the Rule 26,
F.R.Civ.P., discovery conference. However, a conference in accordance with Rule 26 cannot be properly conducted without the identity of the defendants, and defendants' counsel refuses to provide that
information. Significantly, the only discovery that
is being permitted prior to the Rule 26 conference
is the production of information that may lead to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 4218983 (M.D.Fla.)
(Cite as: 2007 WL 4218983 (M.D.Fla.))

the identity of the Does. It is reasonable to carry out
this very limited discovery before the Rule 26 pro-
cess begins.

**\*2** Furthermore, contrary to the defendants' asser-
tion, the information sought is not protected by 20
U.S.C. 1232g. That provision, and its implementing
regulations, permit the disclosure of directory in-
formation, which includes the student's name, ad-
dress, telephone number, e-mail address, and simil-
ar information that not would be considered harm-
ful or an invasion of privacy if disclosed. 34 C.F.R.
99.3. The information that is requested appears to
fall in that category. Moreover, disclosure is au-
thorized to comply with a judicial order or a law-
fully issued subpoena. 34 C.F.R. 99.31(a)(9) (*i* ).
Thus, this Order, as well as the subpoena, authorize
the disclosure of the information.

In addition, the subpoena is not overly broad. The
subpoena is certainly limited in scope. Moreover,
the plaintiffs have shown the need for this informa-
tion in their attempt to identify the defendants.

It is, therefore, upon consideration

ORDERED:

1. That the Motion by Defendants John Doe # 1 and
John Doe # 7 to Vacate the Order Authorizing *Ex
Parte* Discovery, to Quash the *Ex Parte* Subpoena,
and for A Temporary Stay of the *Ex Parte* Sub-
poena (Doc. 13) be, and the same is hereby DENIED.

2. That the University of South Florida shall, within
a reasonable time, comply with the subpoena that
was served upon it by the plaintiffs.

DONE and ORDERED.

M.D.Fla.,2007.
Warner Bros. Records, Inc. v. Does 1-14
Slip Copy, 2007 WL 4218983 (M.D.Fla.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 15

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, CHIEF JUDGE

Civil Case No. 07-cv-01131-LTB-MJW

WARNER BROS. RECORDS INC., a Delaware corporation;
PRIORITY RECORDS LLC, a California limited liability company;
ARISTA RECORDS LLC, a Delaware limited liability company;
ATLANTIC RECORDING CORPORATION, a Delaware corporation;
BMG MUSIC, a New York general partnership;
CAPITOL RECORDS, INC., a Delaware corporation;
ELECTRA ENTERTAINMENT GROUP, INC., a Delaware corporation;
FONOVISA, INC., a California corporation;
INTERSCOPE RECORDS, a California general partnership;
LAFACE RECORDS LLC, a Delaware limited liability company;
LAVA RECORDS LLC, a Delaware limited liability company;
LOUD RECORDS LLC, a Delaware corporation;
MAVERICK RECORDING COMPANY, a California joint venture;
MOTOWN RECORD COMPANY, L.P., a California limited partnership;
VIRGIN RECORDS AMERICA, INC., a California corporation;
SONY BMG MUSIC ENTERTAINMENT, a Delaware general partnership; and
UMG RECORDINGS, INC., a Delaware corporation,

       Plaintiffs,

v.

DOES 1 - 20,

       Defendants.

_____

## ORDER
_____

       This matter is before me on the Plaintiffs' *Ex Parte* Application for Leave to Take Immediate Discovery ("Application"), filed May 30, 2007. Having considered the Application, Plaintiffs' memorandum of law in support of the Application, and the Declaration of Carlos Linares, I conclude that the Application should be granted, as

modified below.

On May 30, 2007, Plaintiffs filed a complaint for copyright infringement against twenty John Doe defendants ("Defendants"). The complaint alleges that Defendants distributed and/or duplicated copyrighted sound recordings owned or controlled by the Plaintiffs without Plaintiffs' authorization via an online media distribution system in violation of 17 U.S.C. § 501. However, Plaintiffs are only able to identify Defendants with a unique Internet Protocol ("IP") address; they do not know Defendants' names or any other identifying information.

Consequently, Plaintiffs seek permission to obtain immediate discovery from Defendants' Internet Service Provide ("ISP"), Qwest Communications Corp. ("Qwest"), whose subscriber activity log files would allow Plaintiffs to discover Defendants' identities. Specifically, they wish to serve a subpoena on Qwest pursuant to Fed.R.Civ.P. 45, seeking each Defendant's true name, address, telephone number, e-mail address, and Media Access Control address.

Under Fed.R.Civ.P. 26(d), "a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)," unless authorized by a court order or agreement of the parties or when otherwise allowed under the Rules of Civil Procedure. A court order allowing expedited discovery will issue only upon a showing of good cause. *Qwest Communications Int'l, Inc. V. Worldquest Networks, Inc.*, 213 F.R.D. 418, 419 (D.Colo. 2003); *Pod-ners, LLC v. Northern Feed & Bean of Lucerne LLC*, 204 F.R.D. 675, 676 (D. Colo. 2002).

Here, Plaintiffs argue that their immediate need of the data in the subscriber activity

2

logs establishes good cause. They indicate that ISPs such as Qwest typically keep these logs for brief periods of time before erasing the data they contain. Plaintiffs might never identify the Defendants without obtaining access to the data contained in the logs. *See* Decl. Carlos Linares, *Ex Parte App.*

Under these circumstances, Plaintiffs have established good cause. Good cause exists where the evidence sought "may be consumed or destroyed with the passage of time, thereby disadvantaging one or more parties to the litigation." *Qwest*, 213 F.R.D. at 419. *See also Semitool, Inc. V. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002) (Good cause exists where "the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party").

However, given the fact that Plaintiffs' Application was *ex parte*, Plaintiffs should serve a copy of this Order along with the subpoena. Further, Qwest may move to quash the subpoena within ten days of being served with the subpoena.

Accordingly, it is ORDERED:

1.    Plaintiffs' *Ex Parte* Application for Leave to Take Immediate Discovery, filed May 30, 2007, is granted. Plaintiffs may serve a Rule 45 subpoena upon Qwest Communications Corp. that seeks information sufficient to identify each Defendant's true name, address, telephone number, e-mail address, and Media Access Control address.

2.    Any information disclosed to Plaintiffs in response to the subpoena may be used by Plaintiffs solely for the purpose of protecting Plaintiffs' rights under the Copyright Act as set forth in the Complaint.

3.  Plaintiffs' shall serve Qwest Communications Corp. with a copy of this Order along with the subpoena.

4.  If Qwest Communications Corp. wishes to move to quash the subpoena, it must do so within ten (10) days of being served with it.

DATED at Denver, Colorado, this ___5th___ day of June, 2007.

BY THE COURT:

___s/Lewis T. Babcock_____
Lewis T. Babcock, Chief Judge

4

# TAB 16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/20/06

-------------------------------------------------- x

WARNER BROS. RECORDS INC., a Delaware
corporation; CAPITOL RECORDS, INC., a
Delaware corporation; MOTOWN RECORD
COMPANY, L.P., a California limited
partnership; UMG RECORDINGS, INC., a
Delaware corporation; SONY BMG MUSIC
ENTERTAINMENT, a Delaware general
partnership; BMG MUSIC, a New York general
partnership; ELEKTRA ENTERTAINMENT
GROUP INC., a Delaware corporation; VIRGIN
RECORDS AMERICA, INC., a California
corporation; ATLANTIC RECORDING
CORPORATION, a Delaware corporation;
PRIORITY RECORDS LLC, a California limited
liability company; INTERSCOPE RECORDS, a
California general partnership; ARISTA
RECORDS LLC, a Delaware limited liability
company; FONOVISA, INC., a California
corporation; LONDON-SIRE RECORDS INC., a
Delaware corporation; LAVA RECORDS LLC, a
Delaware limited liability company; and
MAVERICK RECORDING COMPANY, a
California joint venture,

        Plaintiffs,

    -against-

DOES 1-149,

        Defendants.

-------------------------------------------------- x

Civil Action No.: 05 CV 8365 (RO)

## [PROPOSED] ORDER GRANTING PLAINTIFFS' *EX PARTE* APPLICATION TO TAKE IMMEDIATE DISCOVERY

Upon the *ex parte* application of Plaintiffs to take immediate discovery, the

annexed declaration of Jonathan Whitehead and the exhibit thereto, the annexed declaration of

Maryann E. Penney, Esq., and the accompanying Memorandum of Law, it is hereby:

ORDERED that Plaintiffs may serve immediate discovery on Time Warner Cable to obtain the identity of each Doe Defendant by serving a Rule 45 subpoena that seeks information sufficient to identify each Doe Defendant, including the name, address, telephone number, e-mail address, and Media Access Control addresses for each Defendant. The disclosure of this information is ordered pursuant to 47 U.S.C. § 551(c)(2)(B).

IT IS FURTHER ORDERED THAT any information disclosed to Plaintiffs in response to the Rule 45 subpoena may be used by Plaintiffs solely for the purpose of protecting Plaintiffs' rights under the Copyright Act.

Dated: 1/20/6

_____
United States District Judge

2

# TAB 17

## Westlaw.

Slip Copy
Slip Copy, 2008 WL 123839 (E.D.Tenn.)
(Cite as: 2008 WL 123839 (E.D.Tenn.))

Page 1

Zomba Recording LLC v. Does 1-24
E.D.Tenn.,2008.
Only the Westlaw citation is currently available.
United States District Court, E.D. Tennessee.
ZOMBA RECORDING LLC, et al., Plaintiffs,
v.
DOES 1-24, Defendants.
No. 3:07-cv-448.

Jan. 10, 2008.

Chris Vlahos, W. Russell Taber, Bowen Riley Warnock & Jacobson, PLC, Nashville, TN, for Plaintiffs.

### MEMORANDUM AND ORDER

C. CLIFFORD SHIRLEY, JR., United States Magistrate Judge.
*1 This case is before the undersigned pursuant to 28 U.S.C. § 636(b), the Rules of this Court, and by Order [Doc. 6] of the Honorable Thomas A. Varlan, United States District Judge, for disposition of the plaintiffs' *Ex Parte* Application for Leave to Take Immediate Discovery [Doc. 3].

The plaintiff record companies bring this copyright infringement action against Does 1-24 ("the Doe Defendants"), alleging that the Doe Defendants have disseminated over the Internet copyrighted works owned and/or controlled by the plaintiffs. [Doc. 1]. The plaintiffs now apply *ex parte* for leave to serve limited, immediate discovery on a third party Internet Service Provider ("ISP") to determine the true identities of the Doe Defendants. [Doc. 3]. Although the plaintiffs do not know the true names of the Doe Defendants, the plaintiffs have identified each defendant by a unique Internet Protocol ("IP") address assigned to that defendant on the date and time of that defendant's infringing activity. The plaintiff intend to serve a Rule 45 subpoena on the ISP-in this case, the University of Tennessee at Knoxville-seeking documents that identify each defendant's true name, address and

telephone number, e-mail address, and Media Access Control ("MAC") address. The plaintiffs assert that without this information, the plaintiffs cannot identify the Doe Defendants or pursue their lawsuit to protect their copyrighted works from repeated infringement.

The Rules of Civil Procedure generally provide that a party may not engage in discovery until after the parties have met for a discovery conference pursuant to Rule 26(f).*See*Fed.R.Civ.P. 26(d). However, upon a demonstration of good cause, a party may seek expedited discovery prior to a Rule 26(f) conference. *Qwest Communications Int'l, Inc.,* 213 F.R.D. 418, 419 (D.Colo.2003); *Semitool, Inc. v. Tokyo Electron America, Inc.,* 208 F.R.D. 273, 276 (N.D.Cal.2002)."Expedited discovery under Rule 45 is appropriate when good cause for the discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party."*UMG Recordings, Inc. v. Does 1-4,* No. 06-0652, 2006 WL 1343597, at *1 (N.D.Cal. Mar. 6, 2006).

The Court finds that the plaintiffs have shown good cause for expedited discovery in the present case and that the plaintiffs' need for this expedited discovery outweighs any prejudice to the Doe Defendants. First, without the disclosure of the identities of the Doe Defendants, the present litigation cannot proceed, as the plaintiffs would be unable to effect service of process upon the defendants. *See UMG Recordings,* 2006 WL 1343597, at *1. Second, the plaintiffs have shown that ISPs typically retain user activity logs only for a short period of time-from a few days to a few months-before erasing the data. Thus, there is a likelihood that the information required by the plaintiffs will be destroyed in the near future, thereby precluding the plaintiffs from pursuing this lawsuit to protect their copyrighted works. *See id.*Finally, the plaintiffs are presumed to suffer irreparable harm where their right to the exclusive use of copyrighted material has been invaded. *See id.; see also Qwest Communications,* 213 F.R.D. at

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                      Page 2
Slip Copy, 2008 WL 123839 (E.D.Tenn.)
(Cite as: 2008 WL 123839 (E.D.Tenn.))

419 ("The good cause standard may be satisfied ...      END OF DOCUMENT
where the moving party has asserted claims of in-
fringement and unfair competition"). For these
reasons, the Court finds that good cause exists to al-
low expedited discovery in this case.

*2 Accordingly, it is hereby ORDERED:

(1) The plaintiffs' *Ex Parte* Application for Leave
to Take Immediate Discovery [Doc. 3] is **GRAN-
TED;**

(2) The plaintiffs are hereby **ORDERED** to serve a
copy of this Order, along with a Rule 45 subpoena
requesting each subscriber's name, address, tele-
phone number, e-mail address, and MAC address,
upon the University of Tennessee at Knoxville;

(3) **In accordance with the provisions of the
Cable Communications Policy Act, 47 U.S.C. §
551(c), the University of Tennessee at Knoxville
shall serve a copy of the subpoena and a copy of
this Order upon its relevant subscribers within
five (5) days of the University's receipt of that
subpoena;**

(4) The subscribers shall then have fifteen (15) days
from the date of service upon them to file any ob-
jections or motions to quash with the Court;

(5) If that 15-day period elapses without filings by
any of the subscribers, the University of Tennessee
shall have ten (10) days from such lapse to produce
each relevant subscriber's name, address, telephone
number, e-mail address, and MAC address to the
plaintiffs pursuant to the subpoena; and

(6) The plaintiffs are to use the information dis-
closed pursuant to the subpoena only for the pur-
pose of protecting their rights under the copyright
laws.

**IT IS SO ORDERED.**

E.D.Tenn.,2008.
Zomba Recording LLC v. Does 1-24
Slip Copy, 2008 WL 123839 (E.D.Tenn.)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.